
DA 07-0050

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 182

CAROLYN MCCORMACK,

       Plaintiff and Appellee,

  v.

ANDREA ANDRES,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 05-569
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Lyman H. Bennett, III, Attorney at Law, Bozeman, Montana

          William Conklin, Conklin, Nybo & Lanning, Great Falls, Montana

      For Appellee:

          Michael E. Wheat and Travis W. Kinzler, Cok, Wheat & Kinzler, Bozeman, Montana

Submitted on Briefs:  February 6, 2008

Decided:  May 28, 2008

Filed:

_____
                    Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Andrea Andres (Andres) appeals from orders of the Eighteenth Judicial District Court, Gallatin County, granting motions in limine filed by Carolyn McCormack (McCormack) to exclude certain testimony and documentary evidence at trial. She also appeals the District Court's failure to continue the trial and the court's admission of certain evidence concerning McCormack's medical expenses. We affirm.

¶2 We review the following issues on appeal:

¶3 *Did the District Court abuse its discretion when it prevented Andres from cross-examining McCormack and her medical providers about McCormack's previous injuries and impairment ratings?*

¶4 *Did the District Court abuse its discretion when it prevented Andres from soliciting statements made by McCormack's orthopedic physician concerning McCormack's brain injury?*

¶5 *Did the District Court abuse its discretion when it did not continue the trial date?*

¶6 *Did the District Court abuse its discretion by admitting into evidence McCormack's summary of medical expenses?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 Andres's Ford F-350 pickup collided with McCormack's Chevrolet Corsica on the stretch of Interstate 90 (I-90) that lies between Belgrade and Bozeman. McCormack had slowed her vehicle to approximately 55 miles per hour as she passed a vehicle fire on the shoulder of I-90. Andres's pickup struck McCormack's vehicle while traveling at approximately 75 miles per hour. Andres's pickup crushed the back end of McCormack's car and completely eliminated the rear passenger compartment. Andres admitted that her

2

negligence caused the collision. McCormack sustained injuries to her brain, neck, and back as a result of the collision.

¶8 Andres deposed McCormack in December of 2005. McCormack revealed that in 1993 she had sustained a whiplash injury in a car accident. McCormack said that she had applied for Social Security disability compensation following the 1993 car accident. McCormack also informed Andres that she had injured her neck and upper back while lifting a computer at work in 1996. McCormack had filed a worker's compensation claim for the 1996 work injury. McCormack further revealed that she had sustained head, neck, and back injuries in a car accident in 1999. Andres requested the medical records, attorney's files, and settlement documents related to McCormack's prior incidents in January of 2006.

¶9 The District Court ordered the parties to complete discovery by September 1, 2006. Andres deposed Dr. Sherry Reid, a neurologist treating McCormack, in January of 2006. Andres deposed McCormack's orthopedic physician, Dr. John Vallin, in May of 2006. Dr. Vallin made several statements concerning McCormack's brain injury in response to questions posed by Andres's counsel. McCormack's counsel later asked if Dr. Vallin had treated McCormack "for her back pain and not her head injury; is that correct?" Dr. Vallin responded, "That's correct."

¶10 Andres deposed Dr. Jeff Cory, a neuropsychologist treating McCormack, in July of 2006. Dr. Cory testified that he had discussed with McCormack her 1993 car accident in assessing her current brain injury. He stated that the 1993 incident did not affect his diagnosis. Andres's counsel asked Dr. Cory whether McCormack had informed him of her involvement in the 1999 car accident. Dr. Cory responded that McCormack had not told him

3

of the accident. Andres's counsel then asked if that would "have been a significant history for you to consider . . . ?" Dr. Cory responded "Yes."

¶11    McCormack provided the medical records relating to her 1999 car accident in March of 2006. McCormack provided records pertaining to her 1993 car accident, her application and denial for Social Security disability compensation, and her 1996 work injury on August 31, 2006--one day before the close of discovery.

¶12    The documents provided by McCormack on the last day of discovery included a medical report issued by Dr. Bruce Johnson (the Johnson Report) concerning her 1996 work injury. The Johnson Report concluded that McCormack had suffered a permanent neurologic impairment of 30% of her normal total function. The Johnson Report also stated that McCormack had suffered a permanent psychiatric impairment of 22.5% of her normal total function.

¶13    McCormack filed a motion in limine to preclude Andres from presenting at trial certain statements regarding her brain injury, as well as evidence relating to her 1993 car accident and 1996 work injury. The District Court responded with an order prohibiting Andres from soliciting testimony from McCormack's orthopedic physician regarding McCormack's brain injury. The District Court's order also precluded Andres from introducing evidence relating to McCormack's 1993 car accident, her corresponding Social Security disability claim, and her 1996 work injury and corresponding worker's compensation claim. Andres filed a motion for reconsideration of the court's order granting McCormack's motion in limine.

4

¶14 The District Court held a hearing approximately two weeks before trial on Andres's motion for reconsideration. Andres asserted at the hearing that she did not receive the Johnson Report until after she had deposed Dr. Cory and Dr. Reid. The court asked Andres's counsel how he would hope to proceed in light of these circumstances. Andres's counsel said that he "would be glad if the Court were to vacate trial and I would be glad to travel . . . ." The court stated "Well, I don't want to vacate the trial. Can you fit it in?" Andres's counsel then asserted that he would have tried to depose Dr. Johnson if he had received the Johnson Report with more time. He stated, "But with the close of discovery the day after, and probably the day I received [the Johnson Report], my hands were tied as far as that. So I said, fine, I will live with that. I'll just cross-examine Dr. Cory, Dr. Reid, or any of the other experts saying, how would this--would this affect your opinion . . . ."

¶15 Andres also argued at the hearing on the motion for reconsideration that the District Court should allow her to question Margot Hart (Hart), McCormack's vocational expert, about statements made by McCormack's orthopedic physician, Dr. Vallin, regarding McCormack's brain injury. Hart had conducted a rehabilitation assessment and had made a life care plan for McCormack. Hart filed an addendum to the assessment after Andres had taken Hart's deposition. The addendum referenced Dr. Vallin and included statements that he had made concerning McCormack's brain injury.

¶16 The District Court agreed at the hearing on the motion for reconsideration to reopen discovery for the limited purpose of determining whether the Johnson Report would have had any effect on the diagnoses or opinions of Dr. Cory or Dr. Reid. The District Court also agreed that Andres could cross-examine Hart about McCormack's brain injury if Hart "opens

5

the door to either [Dr. Vallin's] correspondence or any opinion that she may have attributed to [Dr. Vallin] in regard to the brain injury . . ." during direct examination.

¶17    Andres deposed Dr. Cory a second time after the hearing on the motion for reconsideration. Andres's counsel asked Dr. Cory if the permanent impairment ratings from the Johnson Report indicated that McCormack's symptoms from the 1996 injury "would continue being an impairment for the rest of Ms. McCormack's life . . . ?" Dr. Cory stated that he "would disagree with that . . . [and] if you read the Diagnostic and Statistical Manual of Mental Disorders No. IV, you won't find . . . that either of these disorders are lifelong or permanent by nature . . . ."

¶18    Andres also deposed Dr. Reid a second time after the hearing on the motion for reconsideration. Andres's counsel confirmed that McCormack previously had failed to inform Dr. Reid of having suffered the symptoms listed in the Johnson Report at any time before the most recent accident. Andres's counsel asked Dr. Reid if such a history "is important for you not only for treatment but in formulating an opinion or diagnosis [as to] what was causing those symptoms?" Dr. Reid responded that "It would be important to know that." McCormack's counsel asked Dr. Reid if there is "anything in [the Johnson Report] that would change any of your opinions . . . ?" Dr. Reid responded "No."

¶19    The District Court issued an order the day before trial denying Andres's motion for reconsideration. The court also granted a motion filed one day earlier by McCormack to preclude evidence at trial regarding the 1999 car accident. The case proceeded to trial.

¶20    McCormack testified at trial. McCormack identified a one-page document as a summary of all of her medical expenses up to the date of trial related to the recent car

6

accident. Andres objected. Andres asserted that McCormack could not testify to the necessity and reasonableness of the expenses. Andres argued that McCormack's medical providers had to establish the necessary foundation for admitting the summary. The court overruled the objection and admitted the summary into evidence.

¶21 The jury awarded McCormack $361,684 in compensatory damages. Andres appeals the District Court's orders granting McCormack's motions in limine. Andres also appeals the District Court's failure to continue the date of trial and the court's admission of the medical expense summary.

## STANDARD OF REVIEW

¶22 District courts possess broad discretion when determining the admissibility of evidence. *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, ¶ 65, 154 P.3d 561, ¶ 65. A court may exclude relevant evidence if the danger of unfair prejudice, confusion of the issues, needless presentation of cumulative evidence, waste of time, undue delay, or misleading of the jury substantially outweighs the evidence's probative value. *Henricksen v. State*, 2004 MT 20, ¶ 64, 319 Mont. 307, ¶ 64, 84 P.3d 38, ¶ 64. We review a district court's evidentiary rulings for an abuse of discretion. *Seltzer*, ¶ 65. A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or so exceeds the bounds of reason as to work a substantial injustice. *Peterson v. Doctors' Co.*, 2007 MT 264, ¶ 31, 339 Mont. 354, ¶ 31, 170 P.3d 459, ¶ 31.

¶23 We review a district court's decision to continue a trial for an abuse of discretion. *State v. Ibarra-Salas*, 2007 MT 173, ¶ 13, 338 Mont. 191, ¶ 13, 164 P.3d 898, ¶ 13. We will

not overturn a court's decision to deny a motion for a continuance absent a showing of both an abuse of discretion and prejudice to the complaining party. *Ibarra-Salas*, ¶ 13.

**DISCUSSION**

**ISSUE ONE**

¶24 *Did the District Court abuse its discretion when it prevented Andres from cross-examining McCormack and her medical providers about McCormack's previous injuries and impairment ratings?*

¶25 Andres asserts that the District Court should have allowed her to cross-examine McCormack and her medical providers about the injuries that McCormack previously had suffered from the car accidents in 1993 and 1999 and the work related incident in 1996. Andres also faults the District Court for precluding evidence that McCormack had submitted a claim for Social Security disability benefits as a result of the 1993 car accident. Andres argues that the jury would have apportioned the damages for the injuries stemming from this accident after learning of McCormack's previous injuries.

¶26 A defendant must establish a "more probable than not causal link . . ." before a court will allow it to present alternate causation evidence. *Henricksen*, ¶ 70. The party seeking to introduce alternate causation evidence must demonstrate a causal connection between the present symptoms complained of and a prior accident. *Henricksen*, ¶ 70. Mere speculation constitutes an insufficient basis for admitting alternate causation evidence. *Henricksen*, ¶ 63.

¶27 The District Court determined that Andres had failed to present any evidence connecting McCormack's present injuries and the 1993 car wreck and the related Social Security claim. The court cited Dr. Cory's statements that the 1993 accident did not affect

8

his diagnosis of McCormack's present injuries. The District Court also determined that Andres had failed to question McCormack or other pertinent witnesses as to the relevance of the Social Security claim that stemmed from the 1993 accident. The court determined that Andres had failed to affirmatively demonstrate a causal connection between these incidents and McCormack's present injuries.

¶28 The hearing on the motion for reconsideration revealed that Andres did not have access to the Johnson Report, which detailed McCormack's 1996 work incident injuries, until after Andres had deposed McCormack's medical providers. The District Court provided Andres with the opportunity to depose for a second time both Dr. Cory and Dr. Reid. Dr. Cory testified that the injuries listed in the Johnson Report were not permanent by nature. Dr. Reid specifically testified that nothing in the Johnson Report changed her opinions and diagnosis of McCormack's present injuries.

¶29 The District Court noted that Andres likely had established the fact that McCormack's medical providers deemed important the Johnson Report. The District Court concluded that demonstrating the importance of the report, however, did not equate to a demonstration that a "more probable than not" causal connection existed between the 1996 work incident and McCormack's present injuries.

¶30 Finally, the District Court determined that Andres had failed to establish a causal connection between McCormack's present injuries and the 1999 car accident. The District Court made a conscientious decision to exclude evidence of McCormack's previous accidents after providing to Andres the opportunity to establish a probable alternate cause of McCormack's claimed injuries. The court's decision to prohibit Andres from soliciting

alternate causation evidence did not constitute an abuse of discretion under these circumstances. *Peterson*, ¶ 31.

¶31  Andres also argues that the District Court should have allowed her to use evidence of the prior accidents on cross-examination to impeach McCormack. Andres cites the fact that McCormack initially did not disclose all of her past medical information to her doctors as a basis for attacking McCormack's credibility.

¶32  The District Court determined in its initial order that Andres had failed to provide any evidence demonstrating dishonest conduct committed by McCormack. Andres did not raise the issue of McCormack's credibility in its motion to reconsider. Andres also failed to raise McCormack's credibility at the hearing on the motion to reconsider. Accordingly, the District Court did not address the issue of McCormack's credibility in its final order granting McCormack's motions. Andres abandoned her argument regarding McCormack's credibility before the District Court and we need not consider it on appeal. *See e.g. State v. Minez*, 2004 MT 115, ¶ 31, 321 Mont. 148, ¶ 31, 89 P.3d 966, ¶ 31.

### ISSUE TWO

¶33  *Did the District Court abuse its discretion when it prevented Andres from soliciting statements made by McCormack's orthopedic physician concerning McCormack's brain injury?*

¶34  Andres asserts that the District Court improperly precluded evidence concerning McCormack's brain injury. She argues that the District Court should have allowed her to explore statements made by McCormack's orthopedic doctor, Dr. Vallin, concerning the brain injury. Andres further asserts that the vocational expert, Hart, made assessments based

10

in part on Dr. Vallin's statements about the brain injury. Andres argues that the District Court should have allowed her to cross-examine Hart about Dr. Vallin's statements.

¶35 District courts possess broad discretion when determining the boundaries of admissible evidence. *Seltzer*, ¶ 65. McCormack's counsel asked Dr. Vallin during his deposition if he had seen McCormack "for her back pain and not her head injury; is that correct?" Dr. Vallin responded, "That's correct." The District Court noted that Dr. Vallin "did not evaluate [McCormack] for treatment of any brain injuries . . . ."

¶36 The District Court learned at the hearing on the motion for reconsideration that the vocational expert, Hart, had filed an addendum to her initial rehabilitation assessment. The court learned that the addendum referenced Dr. Vallin and statements that Dr. Vallin had made concerning McCormack's brain injury. The District Court acknowledged the potential relevance of the references in the addendum. The court gave permission to Andres to elicit these statements from Hart during cross-examining if Hart "opens the door to either [Dr. Vallin's] correspondence or any opinion that [Hart] may have attributed to [Dr. Vallin] in regard to the brain injury . . . ."

¶37 McCormack affirmatively demonstrated that Dr. Vallin treated her only for back pain. McCormack established that Dr. Vallin made only incidental and secondary observations concerning her brain injury. The District Court, in light of the scope of treatment provided by Dr. Vallin, set forth reasoned restrictions concerning both direct and indirect evidence of the doctor's statements regarding McCormack's brain injury. The record reveals that the District Court did not abuse its discretion in granting McCormack's motions in limine with regard to Dr. Vallin's statements. *Peterson*, ¶ 31.

11

## ISSUE THREE

¶38 *Did the District Court abuse its discretion when it did not continue the trial date?*

¶39 Andres argues that the District Court improperly refused to continue the trial date in light of McCormack's last-minute disclosures. Andres contends that McCormack's last-minute disclosures and the day-before-trial ruling by the court to preclude certain evidence prejudiced Andres's ability to prepare adequately for trial. McCormack asserts that the District Court properly maintained the original trial date in light of Andres' failure to make a formal motion for a continuance and her failure to provide an affidavit in support of a motion to continue.

¶40 McCormack supplied evidence of her previous car accidents early in discovery. McCormack supplied the Johnson Report and other materials on the last day of discovery. The hearing on Andres's motion for reconsideration took place two weeks before trial began.

¶41 The court asked Andres's counsel at the hearing for his proposed course of action in light of the fact that Andres had received some discovery materials after she had deposed a number of McCormack's medical providers. Andres's counsel stated, "I would be glad if the Court were to vacate trial and I would be glad to travel . . . ." The court responded "Well, I don't want to vacate the trial. Can you fit it in?"

¶42 Andres asserts that her counsel's statements constituted a motion for a continuance. Andres further contends that the court's response rendered futile a formal motion for a continuance. The exchange between Andres's counsel and the court fails to rise to the level of an affirmative motion. The statement "I would be glad if the Court were to vacate trial . . ." does not constitute a motion for a continuance. *See* M. R. Civ. P. 7(b)(1); *see also*

12

*Luppold v. Lewis*, 172 Mont. 280, 294-95, 563 P.2d 538, 546 (1977) (citing *State ex rel. McVay v. District Court*, 126 Mont. 382, 393, 251 P.2d 840, 846 (1953) for the proposition that a motion must provide both notice to a party interested in opposing the motion and an opportunity to oppose intelligently the motion). The court's indication that it "[did not] want to vacate the trial" similarly does not demonstrate that the court held a predetermined position with regard to a formal motion for a continuance. We generally decline to consider on appeal arguments that the District Court did not have an opportunity to consider. *Prosser v. Kennedy Enterprises, Inc.*, 2008 MT 87, ¶ 35, 342 Mont. 209, ¶ 35, 179 P.3d 1178, ¶ 35. Andres failed to provide the District Court with the opportunity to rule on a motion for a continuance. We decline to review a decision that the District Court did not make.

## ISSUE FOUR

¶43 *Did the District Court abuse its discretion by admitting into evidence McCormack's summary of medical expenses?*

¶44 Andres faults the District Court for admitting into evidence McCormack's summary of medical expenses. Andres asserts that McCormack's medical providers had to lay the foundation for the admission of the one-page summary.

¶45 We do not require a plaintiff to establish with certainty the causal connection between her accident and her injuries. *Moralli v. Lake County*, 255 Mont. 23, 30, 839 P.2d 1287, 1291 (1992). We confirmed in *Moralli* that a plaintiff need not provide medical expert testimony where the nature of an injury allows a layperson to see plainly or infer the cause of the injury. *Moralli*, 255 Mont. at 29, 839 P.2d at 1291 (citing *Cain v. Stevenson*, 218 Mont.

101, 706 P.2d 128 (1985)). We determined in *Moralli* that a plaintiff suffering from injuries caused by a slip and fall in a public facility could testify competently to her past and present conditions. *Moralli*, 255 Mont. at 30, 839 P.2d at 1291.

¶46 The one-page exhibit introduced by McCormack comprised a summary of the medical expenses that she had incurred as of the date of trial. McCormack testified that the summary reflected accurately her medical expenses stemming from the accident. Like the plaintiff's injuries in *Moralli*, the back and brain injuries that McCormack sustained comprised the type of injuries that a layperson could infer had occurred as a result of a car accident. McCormack could testify competently to these injuries. McCormack also could testify competently to the past expenses that she had incurred as a result of her injuries. We conclude that the District Court did not abuse its discretion in admitting the one-page summary of medical expenses. *Peterson*, ¶ 31.

¶47 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JIM RICE

14