

DA 08-0205

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 135

IN THE MATTER OF THE FORMATION OF
EAST BENCH IRRIGATION DISTRICT

APPEAL FROM: District Court of the Fifth Judicial District,
In and For the County of Madison, Cause No. 5228
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

 For Appellant:

  Michael J. L. Cusick, Moore, O'Connell & Refling, Bozeman, Montana

  Hertha L. Lund and Jason A. Delmue, Wittich Law Firm, Bozeman, Montana

 For Appellee:

  Jean Bergeson and Andrew P. Suenram, Erb & Suenram, Dillon, Montana

  John E. Bloomquist and Patti L. Rowland, Doney, Crowley, Bloomquist,
Payne & Uda, Helena, Montana

      Submitted on Briefs: February 11, 2009

          Decided: April 21, 2009

Filed:

    _____
         Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Open A Ranch, Inc. (Open A) appeals from two orders of the Fifth Judicial District, Madison County. The District Court granted Scott D. Hagedorn, Dawn M. Hagedorn, Imperial Ranches, Inc., Thomas R. Hughes, and Walsh W-Bar Ranch, Inc. (collectively Petitioners) summary judgment on their petition to extend the East Bench Irrigation District (EBID) boundaries. The District Court also denied Open A's motion to consolidate the boundary extension petition with a confirmation hearing on a new contract between EBID and the United States Department of the Interior, Bureau of Reclamation (BOR). We affirm the judgment for the reasons stated herein.

¶2 We review the following issues on appeal:

¶3 *Did the District Court provide Open A with sufficient opportunity to be heard on its objection to the petition to expand the EBID boundaries?*

¶4 *Did the District Court properly grant Petitioners summary judgment on their petition to expand the EBID boundaries?*

¶5 *Did the District Court properly deny Open A's motion to consolidate?*

## FACTUAL AND PROCEDURAL BACKGROUND

**Background**

¶6 The Missouri River rises in southwest Montana and flows 2,500 miles before it joins the Mississippi River near St. Louis, Missouri. The Missouri River ran almost completely uncontrolled before 1940, when the U.S. Army Corps of Engineers (Corps) completed the 140-mile-long Fort Peck Reservoir in eastern Montana. The uncontrolled river flooded

2

frequently. The floods caused substantial damage, especially in the states along the lower section of the river. Massive flooding in March, May, and June of 1943 inundated the Missouri River Basin and riveted public attention to the flooding problems. The June flood left the streets of Omaha and Kansas City navigable by boat. The 1943 floods prompted Congress to appropriate money for public works projects along the Missouri River and its tributaries. *See* Marian E. Ridgeway, *The Missouri River Basin's Pick-Sloan Plan* (U. Ill. Press 1955).

¶7     The Corps developed the "Pick Plan," named for its director Colonel Lewis Pick, to harness the Missouri. The Pick Plan emphasized flood control and navigation. The plan placed a lesser emphasis on hydroelectric power production at the major dams. The plan called for the construction of a nine-foot-deep, 300-foot-wide navigation channel from Sioux City, Iowa, to the mouth of the river. The plan also proposed 1,500 miles of levees on the lower river and five enormous reservoirs in the upper basin. Ridgeway, *The Missouri River Basin's Pick-Sloan Plan*.

¶8     The BOR quickly completed the "Sloan Plan," its own Missouri River plan, after hearing about the Pick Plan prepared by the Corps. The Sloan Plan emphasized reclamation and irrigation. The plan proposed a catch basin of ninety dams and several hundred individual irrigation projects concentrated in the upper basin states of Montana, North Dakota, and South Dakota. The BOR planned to build 17 power plants in order to offset the costs of its project. Ridgeway, *The Missouri River Basin's Pick-Sloan Plan*.

3

¶9      Rather than choose between the competing plans, Congress ultimately opted to combine the two plans into a comprehensive "Pick-Sloan" Plan for development of the entire basin. The combined Pick-Sloan Plan consisted of all the components of both plans. The BOR and the Corps each would construct and operate those portions of the project that it favored. Ridgeway, *The Missouri River Basin's Pick-Sloan Plan*. Congress approved the Flood Control Act of 1944, which included both the Pick and Sloan plans for comprehensive development of the Missouri River Basin. Flood Control Act of 1944, Pub. L. 78-534, 58 Stat. 887 (1944).

¶10     BOR eventually developed the East Bench Unit of the Missouri River Basin Project in the late 1950s and early 1960s. BOR built the Clark Canyon Dam at the head of the Beaverhead River to impound surplus water flows from the Red Rock River and Horse Prairie Creek, which join to become the Beaverhead River. BOR planned for the water from the Clark Canyon reservoir to fully supply water for EBID. The reservoir also provides supplemental water for use within the Clark Canyon Water Supply Company (CCWSC). An order of the Madison County District Court formed EBID in 1957. The majority of the owners of existing water rights in the Beaverhead Valley formed the CCWSC the same year.

¶11     EBID supplies irrigation water to its users pursuant to a contract executed between EBID and BOR. A district court decree ratified the initial contract in 1958. EBID and BOR recently negotiated a new contract. Under the new contract, BOR will allow only lands within EBID's boundaries to receive contract water. Confirmation of the new contract currently is pending in the Beaverhead County District Court in Cause No. DV-06-12986.

4

**The Proposed Expansion of the East Bench Irrigation District**

¶12   Petitioners are members of EBID and also own land inside the original EBID boundaries. Petitioners sought to expand the boundaries of EBID in January and February of 2007. The petitions requested that the District Court extend the boundaries of EBID to include approximately 585 acres that Petitioners have irrigated with water delivered through EBID irrigation works, but fall outside the original irrigation district boundaries. The canals, ditches, pipelines, and works of the EBID physically are capable of irrigating all of the land described in the petitions. Petitioners have in fact irrigated the lands described in the petitions for decades. The EBID Board of Commissioners and BOR both support the petitions to expand the EBID boundaries.

¶13   Open A irrigates lands in the Beaverhead Valley with water rights diverted from the Beaverhead River. Open A holds a water right senior to the water rights held by EBID. Open A is not a member of CCWSC or EBID. Open A filed a Notice of Appearance on February 21, 2007, in the boundary extension proceeding. Open A objected to the EBID boundary extension. Open A's motion also sought to consolidate the boundary extension hearing with the pending contract confirmation hearing. Open A objects to the renegotiated contract between EBID and BOR.

¶14   The District Court scheduled a hearing for February 26, 2007, on the petitions to extend the boundaries of EBID. Open A appeared at the hearing and stated its objection to the boundary extension. The District Court noted that Open A's motion to consolidate also was before the court. The District Court deferred resolution of the EBID boundary extension

5

until after it had resolved the question of whether to consolidate the two cases.

¶15     Petitioners filed answer briefs to Open A's motion to consolidate.  Open A filed a reply brief.  The District Court denied Open A's motion to consolidate on April 25, 2007.  Open A filed an objection on May 15, 2007, to the petitions to expand the boundaries of EBID.  Petitioners requested a scheduling conference before the District Court.  Petitioners noted that the statute governing the extension of an irrigation district boundary provided "no specific procedure for addressing the objections."  Petitioners stated that they "anticipate asking the Court to dismiss the objections and respectfully request the Court's guidance in establishing the procedure and schedule to follow."

¶16     The District Court conducted the scheduling conference on July 23, 2007.  The parties engaged in extensive discovery.  Petitioners filed motions for summary judgment on December 5, 2007.  Petitioners argued that no genuine issue of material fact existed as to whether they had established the statutory elements to extend the EBID boundaries.  Petitioners also contended that Open A had no standing to object to the boundary extension, as Open A had produced no evidence showing that it would be injured or in any way affected by the EBID boundary extension.

¶17     Open A filed a cross-motion for summary judgment on December 6, 2007.  Open A argued that the District Court should dismiss the petitions to extend the EBID boundaries.  Open A argued that Petitioners had not established the legal requirements to expand the boundaries.  Open A also claimed that the District Court did not have the authority to extend the EBID boundaries.  Open A contended that a determination to expand the boundaries

6

necessarily would involve a determination of existing water rights, and that such a determination rests exclusively with the Montana Water Court. Open A also argued that the District Court's approval of the boundary extension would ratify the Petitioners' past illegal irrigation of land outside the EBID boundaries with EBID water. Open A and Petitioners filed answer briefs and reply briefs to the respective summary judgment motions.

¶18 The District Court conducted a hearing on February 4, 2008, on the petition to extend the EBID boundaries. Petitioners and Open A argued their motions for summary judgment and argued the merits of the petitions to extend the EBID boundaries. The District Court granted Petitioners' motion for summary judgment and denied Open A's cross-motion for summary judgment.

¶19 The District Court concluded that Petitioners had met their burden to establish the absence of any genuine issue of material fact that would allow Open A to prevail. The court determined that Open A had not presented substantial evidence raising a genuine issue of material fact that would preclude summary judgment. The District Court concluded that Open A had not established that it would suffer injury or threatened injury as a result of the EBID boundary extension. The District Court filed an order, judgment, and decree on March 24, 2008, that extended the EBID boundaries to include the lands of the Petitioners. Open A appeals.

## STANDARD OF REVIEW

¶20 We review de novo a district court's decision to grant summary judgment, using the same criteria applied by the district court under M. R. Civ. P. 56. *Tin Cup Water and/or*

*Sewer Dist. v. Garden City Plumbing & Heating, Inc.*, 2008 MT 434, ¶ 21, 347 Mont. 468, 200 P.3d 60. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." M. R. Civ. P. 56(c). If we reach the same conclusion as the district court, but on different grounds, we may affirm the district court's judgment. *Germann v. Stephens*, 2006 MT 130, ¶ 21, 332 Mont 303, 137 P.3d 545.

¶21 We review a district court's denial of a motion to consolidate for an abuse of discretion. *Environmental Contractors, LLC v. Moon*, 1999 MT 178, ¶ 35, 295 Mont. 268, 983 P.2d 390. A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or so exceeds the bounds of reason as to work a substantial injustice. *McCormack v. Andres*, 2008 MT 182, ¶ 22, 343 Mont. 424, 185 P.3d 973.

**DISCUSSION**

¶22 *Did the District Court provide Open A with sufficient opportunity to be heard on its objection to the petition to expand the EBID boundaries?*

¶23 Section 85-7-1810, MCA, confers standing to be heard on petitions to extend irrigation district boundaries to all "persons whose rights may be affected by the proposed extension." Open A irrigates with water appropriated from the Beaverhead River. EBID also appropriates water from the Beaverhead River and supplies this water to Petitioners for

8

irrigation. Open A, as an appropriator of a shared water supply with EBID, had standing to be heard in proceedings that potentially would affect the boundaries of EBID. *See Matter of Water Rights No. 101960−41S*, 249 Mont. 425, 430, 816 P.2d 1054, 1059 (1991); *Holmstrom Land Co. v. Meagher Cty. Newlan Creek*, 185 Mont. 409, 425, 605 P.2d 1060, 1069 (1979), *superseded in part by statute*. We cannot agree with the District Court's conclusion that Open A did not have standing to object to the petition to expand the EBID boundaries.

¶24　Section 85-7-1810, MCA, requires the district court to conduct a public hearing on a petition to extend the boundaries of an irrigation district. The district court then "shall make an order either granting or denying said petition." The extension of such boundaries shall not deprive the lands already in the district of an adequate supply of water for irrigation purposes. Section 85-7-1810, MCA. The statute provides no further guidance on the factors that the district court should consider in deciding whether to extend the irrigation district boundaries.

¶25　The District Court conducted the required public hearing on February 26, 2007. Open A appeared at the hearing and objected. The District Court deferred resolution of the petitions to extend the EBID boundaries until after it had resolved Open A's motion to consolidate. The District Court denied the motion to consolidate on April 25, 2007. Petitioners requested a scheduling conference on the petition to expand the EBID boundaries. Petitioners noted that the statutes prescribed no specific procedure. Open A did not object to the motion for a scheduling conference.

9

¶26 The District Court set a schedule for discovery and briefing. After extensive discovery, the parties filed joint motions for summary judgment. Open A filed a consolidated answer to Petitioners' motions for summary judgment, and a response brief to Petitioners' answer to its motion for summary judgment. Open A attempted in each brief to convince the court that it should deny the petitions to extend the EBID boundaries.

¶27 The District Court also conducted a hearing on February 4, 2008. The District Court considered all pending motions regarding the boundary extension. The court permitted Open A to argue extensively the substantive reasons that the court should deny the petition. We disagree with the District Court's determination that Open A lacked standing to object to the petition to extend EBID's boundaries. We conclude, however, that the District Court in fact provided Open A with ample opportunity to object to the petition to extend the EBID boundaries. Section 85-7-1810, MCA.

¶28 *Did the District Court properly grant summary judgment to Petitioners on its petition to expand the EBID boundaries?*

¶29 We turn next to the narrow question of whether the District Court correctly interpreted the statutory requirements for expanding the boundaries of an irrigation district in granting summary judgment in favor of Petitioners. Sections 85-7-1808 to 1810, MCA, provide the limited statutory requirements for the extension of irrigation district boundaries. Section 85-7-1808, MCA, states that "the boundaries of any irrigation district may be extended at any time to include lands susceptible of irrigation by the works of the district." The proponent of the boundary extension must present to the district court a petition signed by the title holders

10

of at least two-thirds of the lands proposed to be included in the irrigation district. Section 85-7-1808, MCA. The district court then must appoint a day for a public hearing and publish notice of the hearing. Section 85-7-1809, MCA. At the public hearing, the district court shall hear from those who may desire changes made in the proposed extension, all those whose lands are included or sought to be included in the district, and "all other persons whose rights may be affected by the proposed extension." Section 85-7-1810, MCA.

¶30 Open A objects to the District Court's conclusion that Petitioners' land is "susceptible of irrigation." Section 85-7-1808, MCA. The District Court noted that the parties had argued "at great length" about the susceptibility of the lands in question to irrigation. The court considered Open A's argument that the lands were not susceptible of irrigation because Petitioners allegedly had no legal right to irrigate the lands. The District Court concluded, however, that "there is no persuasive authority . . . to suggest that 'susceptible [of] irrigation' has any other meaning than its common meaning." The District Court noted that Petitioners had irrigated the land for decades with the works of EBID, and concluded that the land therefore was susceptible of irrigation for the limited purposes of the petition to extend the EBID boundaries.

¶31 We construe a statute to ascertain the legislative intent and to give effect to the legislative will. *State v. Letasky*, 2007 MT 51, ¶ 11, 336 Mont. 178, 152 P.3d 1288. We interpret a statute first by looking to its plain language. *Letasky*, ¶ 11. We may not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA. Open A argues that the District Court incorrectly concluded that the lands were susceptible of

11

irrigation because "the Petitioners' lands are not legally susceptible to irrigation with the EBID water supply." Open A provides no authority for the proposition that we should insert the word "legally" before "susceptible of irrigation." Section 1-2-101, MCA. Open A also argues that the Petitioners' land is not susceptible of irrigation because it does not meet the definition of "irrigable lands" in § 85-7-2205, MCA. Open A provides no authority for its substitution of the term "irrigable lands" for the term "susceptible of irrigation." Open A fails to establish that the legislature said "susceptible of irrigation" when it meant "irrigable lands." *Letasky*, ¶ 11; § 1-2-101, MCA.

¶32 We agree with the District Court that the term "susceptible of irrigation" means land that physically can receive irrigation water from the EBID works. Open A has provided no evidence to refute Petitioners' contention that the EBID works physically can irrigate the land. Open A in fact implicitly concedes that the land physically is susceptible of irrigation when it argues that Petitioners illegally have irrigated the land with EBID water in the past. The District Court correctly concluded that Petitioners had satisfied the statutory elements required for the petition to extend EBID and that Open A had not presented substantial evidence raising a genuine issue of material fact to preclude summary judgment. *Tin Cup*, ¶ 22.

¶33 Open A also argues that the District Court's decision to extend the EBID boundaries acted as a de facto adjudication of water rights in violation of the Montana Water Court's exclusive jurisdiction to interpret and determine existing water rights. Open A contends that the District Court's decision effectively approved the Petitioners' allegedly illegal past

12

irrigation practices. Our decision to affirm the District Court determines only that the Petitioners' land physically is susceptible of irrigation by EBID works and that the Petitioners' land may be included in EBID boundaries and may be taxed by EBID.

¶34 We do not determine whether the Petitioners legally may irrigate the land in question using EBID water. We do not approve any change in use, or increase in use, by the Petitioners or by EBID. We do not approve any change in point of diversion or place of use by the Petitioners or EBID. We do not pass judgment on the legality of Petitioners' past, present, or future irrigation of the land in question. All of these questions must be determined in the first instance by the Montana Water Court. *In re Petition of Deadman's Basin Users*, 2002 MT 15, ¶ 15, 308 Mont. 168, 40 P.3d 387. The District Court has no authority to issue a final adjudication of water rights. *Deadman's Basin*, ¶ 15. Open A still may attempt to establish through the Montana Water Court that Petitioners' irrigation of the land using EBID water is illegal or infringes upon Open A's senior water rights.

¶35 We conclude only that the District Court properly granted summary judgment to the Petitioners on their petition to expand the EBID boundaries. We base our conclusion on Open A's failure to present substantial evidence sufficient to raise a genuine issue of material fact regarding the narrow statutory elements required to extend the boundaries of an irrigation district. *Tin Cup*, ¶ 22. We therefore affirm the District Court's decision to extend the EBID boundaries, although we arrive at this conclusion based upon different grounds than the District Court. *Germann*, ¶ 21.

¶36 *Did the District Court properly deny Open A's motion to consolidate?*

¶37 Open A argues that the District Court should have granted its motion to consolidate the petitions to extend the EBID boundaries with the contract confirmation proceedings in the Fifth Judicial District, Beaverhead County. EBID filed a petition on November 20, 2006, for court approval pursuant to § 85-7-1957, MCA, of a renegotiated contract between EBID and BOR.

¶38 Open A contends that the petitions to extend the EBID boundaries directly relate to the contract confirmation case. Open A asserts that the contract between BOR and EBID illegally extends the boundaries of EBID, as the contract foresees allowing EBID to irrigate approximately 28,000 acres. The 1957 contract authorized EBID to irrigate only 21,800 acres. Open A likewise challenges as illegal the petitions to extend the EBID boundaries in the Madison County case. Open A argues that both cases therefore raise common issues of law and fact.

¶39 M. R. Civ. P. 42(a) provides that a district court may consolidate cases when actions involving a common question of law or fact are pending before the court. We will not overturn a district court's denial of a motion to consolidate absent an abuse of discretion. *Environmental Contractors*, ¶ 35. The district court may deny a motion to consolidate even where two cases appear to involve common issues of law and fact if other factors convince the court not to consolidate. *Ass'n of Unit Owners v. Big Sky of Mont.*, 245 Mont. 64, 86, 798 P.2d 1018, 1031-32 (1990).

¶40 After reviewing both cases, the District Court determined that Open A had not established a nexus between the two cases and that there was no danger of conflicting or

14

duplicative judgments. The court concluded that the two cases therefore did not involve common questions of law or fact. The court noted that the Petitioners were not parties to the contract or the confirmation hearing. The court emphasized that the procedures and issues that a court considers in a boundary extension are distinct from those considered in a contract confirmation. The court concluded that consolidation would force Petitioners to follow procedures and be involved in issues that did not involve them and thereby would cause Petitioners unnecessary delay and expense. The court stated that consolidation provided no advantage to anyone except, perhaps, Open A.

¶41 The District Court properly considered M. R. Civ. P. 42(a) in its analysis of Open A's motion to consolidate. The District Court clearly delineated its reasons for denying Open A's motion. The record does not indicate that the District Court acted arbitrarily without employment of conscientious judgment or so exceeded the bounds of reason as to work a substantial injustice. *McCormack*, ¶ 22. The District Court did not abuse its discretion when it denied Open A's motion to consolidate. *Environmental Contractors*, ¶ 35.

¶42 We emphasize again, however, that neither the petition to expand EBID's boundaries at issue in this appeal, nor the contract proceeding in Beaverhead County, can be used as a vehicle to circumvent the authority of the Montana Water Court to determine the priority of water rights, to determine the availability of water for irrigation in a particular area, and the appropriateness of any attempts to change the point of diversion or place of use of any water for irrigation. The Montana Water Court can address these matters in due course in any proceeding brought by an affected party.

15

¶43     Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE
/S/ JAMES C. NELSON