DA 12-0322

FILED

May 7 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 121

BILLY KAYE WHEATON and BECKY JO CHILDERS,
Co-Personal Representatives of the ESTATE OF
MARGARET HOWARD, and BILLY WHEATON and
BECKY CHILDERS, individually,

    Plaintiffs and Appellants,

    v.

TOM BRADFORD and DANE BRADFORD, Co-Personal
Representatives of the ESTATE OF JOHN BRADFORD,

    Defendants and Appellees.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
                In and For the County of Carbon, Cause No. DV 10-113
                Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Michael G. Eiselein; Eiselein & Grubbs, PLLP; Billings, Montana

            Elizabeth A. Halverson; Elizabeth A. Halverson, P.C.; Billings, Montana

        For Appellee:

            Mark D. Parker, Shawn P. Cosgrove; Parker, Heitz & Cosgrove, PLLC;
            Billings, Montana

                                Submitted on Briefs:    January 3, 2013
                                            Decided:    May 7, 2013

Filed:

_____
                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Plaintiffs Billy Kaye Wheaton and Becky Jo Childers, co-personal representatives of the Estate of Margaret Howard (collectively "Howards"), filed a wrongful death and survivorship action against the co-personal representatives and the Estate of John Bradford (collectively "Bradfords"), alleging negligence. A jury found that John Bradford (John) was not liable in negligence for the death of Margaret Howard (Margaret). Howards appeal from the judgment entered in favor of the Bradfords. We affirm and address the following issues:

¶2    *1. Did the District Court err by permitting the defense expert to offer opinions, including video simulations, without a sufficient evidentiary foundation?*

¶3    *2. Did Bradfords violate the Montana Rules of Civil Procedure by failing to supplement the disclosure of the defense expert?*

¶4    *3. Did the District Court err by denying Howards' motion for a new trial?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5    On June 12, 2010, Margaret was driving south and John was driving north on U.S. Highway 212, a two-lane highway, south of Red Lodge. The two vehicles collided, coming to rest along the fog line in Margaret's southbound lane. Neither Margaret nor John survived, and there were no witnesses who could testify to the events leading up to the crash.[1] Local resident Julia Higgins (Higgins) arrived at the scene shortly after the accident and provided a witness statement to Montana Highway Patrol (MHP). MHP troopers investigated the accident and ultimately prepared a report.

---

[1] John's wife, Lavetta, was a passenger in the Bradford vehicle, but she could not recall how the accident happened.

2

¶6     At her deposition, Higgins stated that she was traveling south on Highway 212. She said she saw John's truck approaching in the northbound lane but did not see Margaret's vehicle until she after she had arrived at the scene of the accident. Higgins said the crash occurred on a section of Highway 212 that was obscured by a small rise when traveling southbound. Howards' counsel asked: "Do you have any memory of seeing [Margaret's] car before the accident at all?" to which Julia responded, "No. Never saw it."

¶7     Both parties sought to reconstruct the accident. Howards retained two accident reconstructionists, but did not present the testimony of either at trial. Instead, they presented a partial accident reconstruction prepared by Trooper Hensley, who testified that, based on the final resting position of the vehicles, his opinion was that John's vehicle crossed the center line and hit Margaret's vehicle in the southbound lane.

¶8     Dr. Harry Townes (Townes), an engineer, was retained by Bradfords to reconstruct the accident. Townes visited the accident scene to take measurements and make observations. Townes used a computer program called the Engineering Dynamics Simulation Model of Automobile Collisions Version 4 (EDSMAC4) to simulate events leading up to the accident. The computer program pairs known variables with unknown pre-collision variables and runs trial scenarios to identify vehicle conditions before the accident. When a simulation of combined known and unknown variables results in a match of the known final resting positions of the vehicles, that combination of pre-collision conditions is considered, in Townes' opinion, to be a viable explanation of the vehicle trajectory leading to the accident.

¶9 Townes' expert witness disclosure statement included his opinion that Margaret "made an excursion into the northbound lane" and John "made an evasive maneuver" to avoid Margaret's oncoming vehicle. Townes' disclosure stated that he formed his opinion based upon the computer simulation results that incorporated MHP measurements and his measurements taken from the accident scene, the physical dimensions and weights of the vehicles, and data from the airbag control module in Margaret's vehicle. Townes' disclosure did not reference witness Higgins or her statement. During Townes' subsequent deposition, the following exchange took place:

> [Howards' counsel]: Is there any physical evidence at the scene . . . to support my client being in your client's lane of travel.
> [Townes]: Yes, there's a witness. Physical evidence, no; there is a witness, yes.
> [Howards' counsel]: And I'm asking you about physical evidence.
> [Townes]: No.
> [Howards' counsel]: Okay. And the witness you're referring to is Julia Higgins?
> [Townes]: Yes.
> [Howards' counsel]: Okay. And that's the only evidence that supports my client being in your client's lane of travel prior to this accident, correct?
> [Townes]: No, the simulation is also evidence that supports it.

Townes was asked about Higgins again later in the deposition:

> [Howards' counsel]: Would you agree with me that we don't know – Julia Higgins' statement, and I understand that you're relying on that –
> [Townes]: No, I'm not.
> [Howards' counsel]: You're not, okay.
> [Townes]: No. It's not anywhere in my disclosure.
> [Howards' counsel]: Well, then, setting aside Julia Higgins' statement . . .

¶10 Howards filed a motion in limine prior to trial seeking exclusion of Townes' opinions and the computer model simulations on the grounds they were "speculative,

4

unscientific or not proper subjects for expert opinion." The District Court did not rule on Howards' motion in limine before trial.

¶11 At trial, Townes testified, "I reviewed the information that was available to me. And that would include the Montana Highway Patrol report, the witness – one witness statement that Montana Highway Patrol took." He further stated that he used known physical information as input variables in the computer simulations, including the MHP measurements of the final resting positions of the vehicles, his measurements from the accident scene, the physical properties of the vehicles, and the data from the control module sensor in Margaret's vehicle. Townes testified that the computer program was "a well-recognized program, widely used, tested extensively." Townes explained that his computer simulations led him to conclude that Margaret "made an excursion into the northbound lane" and John "made an evasive maneuver" to avoid Margaret's vehicle.

¶12 The jury returned a verdict for Bradfords, finding John not negligent. Howards filed a motion for a new trial, which was denied by the District Court. Howards appeal.

## STANDARD OF REVIEW

¶13 Admissibility of evidence is a question for the district court, which we review for an abuse of discretion. *Cottrell v. Burlington N. R.R.*, 261 Mont. 296, 301, 863 P.2d 381, 384 (1993). A district court has broad discretion in determining whether evidence is relevant and admissible. *McCormack v. Andres*, 2008 MT 182, ¶ 22, 343 Mont. 424, 185 P.3d 973. "The trial court is vested with *great* latitude in ruling on the admissibility of expert testimony." *Cottrell*, 261 Mont. at 301, 863 P.2d at 384 (emphasis in original). We review a district court's denial of a motion of a new trial for an abuse of discretion.

5

*Perdue v. Gagnon Farms, Inc.*, 2003 MT 47, ¶ 8, 314 Mont. 303, 65 P.3d 570. "A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or so exceeds the bounds of reason as to work a substantial injustice." *McCormack*, ¶ 22.

## DISCUSSION

¶14    *1. Did the District Court err by permitting the defense expert to offer opinions, including video simulations, without a sufficient evidentiary foundation?*

¶15    Howards do not dispute that Townes was qualified to testify as an expert but argue that he laid insufficient factual information for his opinion testimony and that his methods of reconstruction were not reliable. They argue that Townes' offered "nothing more than a *mere possibility*" and that his opinion was "so utterly lacking in foundation that it should never have seen the light of day in the courtroom." (Emphasis in original.) Bradfords respond that Townes premised his expert opinion upon a sufficient foundation, and that the accident simulation program and the methods employed by Townes are widely accepted in the accident reconstruction field.[2]

¶16    M. R. Evid. 702 provides the criteria for admission of expert opinions:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

---

[2] Bradfords also argue that "Howards repeatedly waived any objections to the admission of Dr. Townes' simulations and opinions" by failing to object to them during trial. However, Howards filed a motion in limine prior to trial to exclude Townes' testimony and the District Court did not expressly rule on the motion, leaving it unclear to what extent the District Court would permit Townes to testify as trial began. Under these circumstances we deem it appropriate to address the merits of Howards' evidentiary claims preserved by the motion in limine.

Before a district court may allow an expert to express an opinion, an evidentiary foundation must be laid to demonstrate that the expert has adequate knowledge, by training or education, and sufficient factual information on which to base an opinion. *Cottrell*, 261 Mont. at 301, 863 P.2d at 384-85; *Hulse v. State*, 1998 MT 108, ¶ 48, 289 Mont. 1, 961 P.2d 75. We have stated that "it is better to admit relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross-examination and refutation." *Hulse*, ¶ 53 (citations omitted).[3]

¶17 Generally, accident reconstruction is not a novel science and has been commonly recognized and used in the courts. *See Horn v. Bull River Country Store Props.*, 2012 MT 245, ¶ 48, 366 Mont. 491, 288 P.3d 218; *Peterson v. St. Paul Fire and Marine Ins. Co.*, 2010 MT 187, ¶ 3, 357 Mont. 293, 239 P.3d 904; *State v. Shauf*, 2009 MT 281, ¶ 4, 352 Mont. 186, 216 P.3d 740. Accident reconstruction evidence involving computer simulations has been admitted after inquiry "regarding whether the reasoning or methodology behind the testimony is scientifically valid and whether the reasoning or methodology can be applied to the facts in issue." *Livingston v. Isuzu Motors*, 910 F. Supp. 1473, 1494-95 (D. Mont. 1995); *see also* David L. Faigman et al., *Modern*

---

[3] Expert testimony regarding novel scientific evidence must be reliable. *Hulse*, ¶ 52 (citing *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 2795 (1993)). We have adopted non-exclusive factors to consider when determining whether novel scientific evidence is reliable, including testing, peer review, technique rate of error, standards of operation and general acceptance. *See Hulse*, ¶ 52 (citations omitted). Howards' motion in limine made a *Daubert* challenge to Townes' proffered testimony. On appeal, Howards do not frame a *Daubert* challenge to Townes' testimony as novel science, but argue under Issue 2 that Bradfords' failure to supplement Townes' expert disclosure prevented the District Court from conducting a full *Daubert* analysis.

*Scientific Evidence: The Law and Science of Expert Testimony* vol. 5, § 44:12, 816-17 (2012-2013 ed., West 2012).

¶18 During trial, Townes testified he used factual information and physical evidence in his computer simulations, including measurements of the final resting positions of the vehicles taken by MHP, his own measurements and observations from the accident scene, the physical properties of the vehicles, and data from the control module sensor located in Margaret's vehicle. Townes offered that his computer simulation models were based on scientific and mathematic principles that are accepted in the accident reconstruction field. Townes testified that the computer program is widely used and is tested extensively.

¶19 Based on this record, we conclude that the District Court did not abuse its discretion by ruling that Townes' testimony was supported by an adequate factual foundation and by determining that the scientific method used by Townes to reconstruct the accident was reliable and admissible. Bradfords satisfied the requirements under M. R. Evid. 702 to present Townes' expert opinion and testimony.

¶20 *2. Did Bradfords violate the Montana Rules of Civil Procedure by failing to supplement the disclosure of the defense expert?*

¶21 Howards assert that "[a]fter Townes was deposed on July 22, 2011, he changed the foundational basis of his 'excursion' theory" and that Bradfords' "failure to supplement Townes' opinions is a clear violation of Rule 26(e)(2) which mislead[s] the court and counsel." Howards argue that Townes failed to disclose he was no longer relying upon the testimony of Higgins. Bradfords reply that, though he mentioned that

8

Higgins was a witness, Townes never relied on her statement and did not alter his opinion. Thus, there was no reason for his expert disclosure to be supplemented.

¶22 Expert witnesses disclosure statements, required by M. R. Civ. P. 26(b)(4), must "state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." M. R. Civ. P. 26(b)(4)(A)(i) (2011). The duty to supplement or correct discovery is described in M. R. Civ. P. 26(e), which states, in its entirety:

> (e) Supplementing Responses.
>
> (1) In General. A party who has responded to an interrogatory, request for production, or request for admission must supplement or correct its response: (A) in a timely manner if the party learns that in some material respect the response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.
>
> (2) Expert Witness. For an expert whose opinion must be disclosed under Rule 26(b)(4), the party's duty to supplement extends both to information included in the disclosure and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time of the preparation and submission of the pretrial order to the court.

M. R. Civ. P. 26(e). As revised in 2011, M. R. Civ. P. 26(e) is nearly identical to F. R. Civ. P. 26(e). The Committee Notes to F. R. Civ. P. 26(e) provide the following guidance:

> The obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect. *There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process*, as when a witness not previously disclosed is identified during the taking of a

9

deposition or *when an expert during a deposition corrects information contained in an earlier report.*

Proposed Amendments to the Federal Rules of Civil Procedure and Forms, 146 F.R.D. 535, 641 (1993). (Emphasis added.) A party must supplement or correct the expert disclosure statement when the party learns that "in some material respect" the information given in the expert's statement "is incomplete or incorrect" and the updated information has not otherwise been disclosed to the other party during the discovery process. M. R. Civ. P. 26(e)(1)-(2); *see also* Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* vol. 8A, § 2049.1, 319 (3d ed., West 2010). "Information is 'incomplete or incorrect' in 'some material respect' if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 77 (W.D.N.Y. 2011) (quoting F. R. Civ. P. 26(e); *Sender v. Mann*, 225 F.R.D. 645, 653-54 (D. Colo. 2004)).

¶23 Townes' expert disclosure statement did not mention Higgins' statement. During his deposition, Townes acknowledged that Higgins had provided a witness statement to MHP, but answered "No, I am not" when asked if he was relying on Higgins' statement. If there was any uncertainty about whether Townes was relying on Higgins, rather than simply acknowledging the existence of her statement, it was dispelled during this latter part of his deposition. Howards' counsel then acknowledged that Townes was not relying on Higgins as the deposition continued, stating, in a question, "Well, then, setting aside Julia Higgins' statement . . ." At trial, Townes testified that, during the course of

his investigation, he had reviewed the information that had been given to him from MHP, including "one witness statement," but did not testify that his opinions were based on the statement.

¶24 Consistent with his disclosure, Townes clarified during his deposition that his opinion did not rely upon Higgins' statement. His position did not change at trial. Thus, his disclosure did not contain information that was "incomplete or incorrect" "in some material respect" that required correction or updating under M. R. Civ. P. 26(e).

¶25 *3. Did the District Court err by denying Howards' motion for a new trial?*

¶26 Howards' argument in favor of a new trial is premised upon the issues discussed above. Howards claim that Townes' opinion lacked foundation and was admitted erroneously, which constitutes a "prejudicial irregularity" under § 25-11-102(1), MCA. They argue that the substantial changes in Townes' reliance on witness testimony and Bradfords' corresponding failure to revise his expert disclosure constituted unfair surprise.

¶27 A new trial may be granted for a reason listed in § 25-11-102, MCA, which materially affects the substantial rights of the aggrieved party, including, "irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial" or "accident or surprise that ordinary prudence could not have guarded against." Section 25-11-102(1), (3), MCA. A party seeking a new trial because of a surprise under § 25-11-102(3), MCA, must demonstrate:

(1) the moving party was actually surprised; (2) the facts causing the surprise had a material bearing on the case; (3) the verdict or decision resulted mainly from these facts; (4) the surprise did not result from the moving party's inattention or negligence; (5) the moving party acted promptly and claimed relief at the earliest opportunity; (6) the moving party used every means reasonably available at the time of the surprise to remedy it; and (7) the result of a new trial without the surprise would probably be different.

*Clark v. Bell*, 2009 MT 390, ¶ 30, 353 Mont. 331, 220 P.3d 650 (citations omitted).  A district court's abuse of discretion in denying a new trial must be "so significant as to materially affect the substantial right of the complaining party" to be reversible.  *Perdue*, ¶ 8.

¶28    In denying Howards' motion for a new trial, the District Court concluded that "there was no impermissible surprise occasioned by Townes' testimony."  We agree.  As discussed above, Townes clearly articulated the basis for his opinion and there was not a reasonable basis for Howards to believe otherwise.  Therefore, Howards have not established an "actual surprise" under § 25-11-102(3), MCA.  Further, because Bradfords were not required to supplement Townes' expert disclosure, there was no irregularity in the proceedings that warranted the granting of a new trial under § 25-11-102(1), MCA.  Townes' testimony was properly admitted and did not unfairly prejudice the Howards.

¶29    Affirmed.

                                              /S/ JIM RICE
We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ BETH BAKER