DA 06-0800

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 426

JAMES ANTHONY NEAL,

       Plaintiff and Appellant,

  v.

JEREMY JAY NELSON,

       Defendant, Appellee and Cross-Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-04-157(C)
Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              William L. Managhan; Managhan & Kortum-Managhan Law Firm, PLLC;
Kalispell, Montana

       For Appellee and Cross Appellant:

              Fred Simpson, Travis B. Dye; Phillips, Bohyer & Hedger, P.C.;
Missoula, Montana

Submitted on Briefs:  November 14, 2007

Decided:  December 16, 2008

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Appellant James Anthony Neal (Neal) was injured when the vehicle he was driving was rear-ended by a vehicle driven by Appellee Jeremy Jay Nelson (Nelson). After a jury trial in the Eleventh Judicial District Court, Flathead County, Neal was awarded $7,358.56 in damages and $1,275.00 in attorney fees. Neal appeals and Nelson cross-appeals. We affirm.

¶2     We address the following issues on appeal:

¶3     1. Did the District Court err by denying Neal's motion for a new trial after determining that substantial credible evidence supported the jury's award of $7,358.56 in damages?

¶4     2. Did the District Court abuse its discretion by admitting defendant's expert testimony about Neal's prior knee and back injuries?

¶5     3. Did the District Court abuse its discretion by denying Neal's proposed jury instruction on multiple causation?

¶6     4. Did the District Court abuse its discretion by allowing Dr. Wilson to testify after concluding that the financial information the court had ordered Dr. Wilson to provide was satisfactory?

¶7     5. Did the District Court abuse its discretion by awarding Neal attorney fees pursuant to M. R. Civ. P. 37(c) after Nelson failed to admit prior to trial that Neal had been injured in the car accident?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶8 On the morning of October 30, 2002, Neal was sitting in his vehicle at a stop light when Nelson negligently drove into the rear of Neal's vehicle. Neither vehicle's airbags deployed in the collision. Neal, a firefighter with the Kalispell Fire Department, did not request any medical treatment at the scene. Both parties drove away in their vehicles after the highway patrol completed its investigation. Later that same day, Neal visited his personal chiropractor, Dr. Steven Biggs, who diagnosed Neal with a cervical sprain/strain, thoracic sprain/strain, and muscle spasms.

¶9 At the time of the accident, Neal was on leave from work with the Kalispell Fire Department due to a work-related knee injury. He continued periodic treatment with Dr. Biggs for his neck injury, and by January 2003, was reporting a pain level of two on a scale of one-to-ten. However, Dr. Biggs ordered an MRI of Neal's neck in February 2003 because a knot in Neal's neck was only improving slowly. After reviewing the MRI, Dr. Biggs advised Neal that he may eventually need surgery on his neck if he continued to wear his firefighting helmet at work. Dr. Biggs referred Neal to Dr. Robert Hollis, a neurosurgeon. Dr. Hollis did not, as Neal now asserts, state that Neal would more likely than not need surgery. Rather, Dr. Hollis reported that Neal could "continue his conservative measures knowing that at some point he may require surgical decompression." According to his report admitted at trial, Dr. Hollis did not advise Neal against wearing a helmet or continuing on as a firefighter. Dr. Hollis then referred Neal to Dr. Steven Martini, who recommended that Neal consider physical therapy, facet

3

injections, or a nuclear medicine scan, as appropriate. Neal did not follow those recommendations or request a second opinion regarding whether he should retire from firefighting.

¶10 Neal did not report his neck injury to Dr. Jonathan Bechard when he visited the Veteran's Administration Clinic in March 2003, but did report the work-related knee injury, as well as chronic low back pain that occasionally bothered him. After recovering from his knee injury and returning to work on April 1, 2003, Neal did not miss any work due to the neck strain, but retired at the end of 2003, and continued to wear his firefighting helmet during that time. Neal did not report his neck pain to the Kalispell Fire Department, explaining that the Department required firefighters to be "100 percent" healthy in order to work. Upon announcing his retirement later that year, Neal underwent an exit physical with RNP Alison Charman at Kalispell Diagnostic Services. Once again Neal reported his knee injury and chronic lower back pain, but did not report any problems with his neck.

¶11 Prior to trial, Nelson admitted negligence in causing the car accident but denied that he had caused Neal's neck injury. The central issue at trial was whether Neal's neck injury forced him to retire five years earlier than he had planned. According to Neal, he did not decide to retire until after Dr. Biggs told him to avoid activities requiring the use of a helmet, including firefighting, in February 2003. Other testimony and evidence revealed that Neal had told a doctor nearly five years before the accident that he was considering retiring in 1999. In addition, four days after the accident, on November 4,

4

2002, Neal advised the Public Employees Retirement Administration (PERS) that he was considering retiring at the end of 2002. In January 2003, one month before his conversation with Dr. Biggs, Neal also submitted an application to Flathead Valley Community College to teach in their Fire Science/EMS Department. All of this occurred before Neal was advised against wearing a helmet at work.

¶12 Neal underwent an Independent Medical Evaluation (IME) with Dr. Lennard Wilson just prior to trial. Dr. Wilson agreed that Neal suffered a neck sprain or strain as a result of the accident, but stated that 90 percent of people with such injuries get better. Dr. Wilson testified that Neal could have kept working as a firefighter without having surgery, even though he had reached maximum medical improvement, but would likely continue to experience some chronic pain in his neck.

¶13 At the close of trial, the jury found that Neal was injured and that Nelson's negligence caused Neal's injury. However, the jury awarded Neal only $7,358.56, which matched the amount he had requested for past medical expenses. Neal moved the District Court for a new trial on damages, arguing that the jury disregarded uncontroverted evidence that Neal suffered pain and will incur future medical expenses as a result of his neck injury. The District Court denied Neal's motion for a new trial, observing that the evidence demonstrated a significant dispute regarding the nature, cause, and severity of Neal's injuries, and therefore it was possible that the jury's award included compensation for both past medical expenses and future pain and suffering.

¶14 Neal appeals. Additional facts will be discussed herein as necessary.

**STANDARDS OF REVIEW**

¶15 We recently clarified our standard of review of a district court's ruling on a motion for a new trial, where the basis of the motion is insufficiency of the evidence, in *Giambra v. Kelsey*, 2007 MT 158, ¶¶ 24-27, 338 Mont. 19, ¶¶ 24-27, 162 P.3d 134, ¶¶ 24-27. "Our review of a district court's ruling on a motion for a new trial where the basis of the motion is insufficiency of the evidence is de novo. Like the district court, we determine whether there was substantial evidence to support the verdict." *Giambra*, ¶ 27 (citing *Renville v. Taylor*, 2000 MT 217, ¶ 14, 301 Mont. 99, ¶ 14, 7 P.3d 400, ¶ 14). In determining whether substantial evidence supports the verdict, we view the evidence in a light most favorable to the prevailing party. *Jenks v. Bertelsen*, 2004 MT 50, ¶ 30, 320 Mont. 139, ¶ 30, 86 P.3d 24, ¶ 30. Where substantial evidence supports a verdict, the verdict generally cannot be overturned or vacated. *Giambra*, ¶ 26. We may not substitute our judgment for that of the jury as to the proper amount of damages. *Moore v. Beye*, 2005 MT 266, ¶ 11, 329 Mont. 109, ¶ 11, 122 P.3d 1212, ¶ 11, *overruled on other grounds by Giambra*, ¶ 27 (citation omitted).

¶16 A district court has broad discretion to determine the admissibility of evidence. *Seeley v. Kreitzenberg Rentals, LLC*, 2007 MT 97, ¶ 14, 337 Mont. 91, ¶ 14, 157 P.3d 676, ¶ 14, *overruled on other grounds by Giambra*, ¶ 27. We therefore review a district court's ruling on the admissibility of evidence for an abuse of discretion. *Seeley*, ¶ 14. Likewise, we review a district court's decision to give or refuse a proposed jury instruction for an abuse of discretion. *Giambra*, ¶ 28. We review discovery rulings for

6

abuse of discretion as well. *Bugger v. McGough*, 2006 MT 248, ¶ 20, 334 Mont. 77, ¶ 20, 144 P.3d 802, ¶ 20. We also review a district court's imposition of sanctions under M. R. Civ. P. 37 for an abuse of discretion. *Linn v. Whitaker*, 2007 MT 46, ¶ 13, 336 Mont. 131, ¶ 13, 152 P.3d 1282, ¶ 13. In reviewing for an abuse of discretion, "[w]e consider whether the trial court in the exercise of its discretion acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice." *Linn*, ¶ 13 (citations and quotation marks omitted).

## DISCUSSION

¶17 **1. Did the District Court err by denying Neal's motion for a new trial after determining that substantial credible evidence supported the jury's award of $7,358.56 in damages?**

¶18 Neal argues that the uncontroverted evidence at trial established that Neal experienced pain and suffering as a result of his injury, and therefore the jury's damage award is not supported by the evidence. Neal's claim for past medical expenses amounted to $7,358.56—the same amount awarded by the jury. As such, Neal argues the jury failed to award any damages for his pain and suffering or future medical treatment, and that this is illegal under Montana law. Accordingly, Neal contends that the District Court should have granted his motion for a new trial on damages.

¶19 "[A]lthough it is within the jury's province to weigh the evidence and determine credibility, a jury is not free to disregard uncontradicted, credible, nonopinion evidence." *Thompson*, 284 Mont. at 443, 945 P.2d at 50. We have held that "where a jury fails to

7

award any damages when the only evidence of record supports an award, that verdict is not supported by substantial evidence and may be set aside." *Renville*, ¶ 24 (quoting *Thompson*, 284 Mont. at 446, 945 P.2d at 52).

¶20 In *Renville,* the plaintiff sought damages after being rear-ended in a collision. *Renville*, ¶ 5. The defendant admitted fault, leaving for trial the issue of whether the defendant caused injury to the plaintiff and, if so, the amount of the plaintiff's damages. *Renville*, ¶ 12. A jury found that the plaintiff was injured as a result of the accident, but only awarded damages for her past medical expenses. The plaintiff had presented evidence of other damages including future medical expenses, lost earnings and earning capacity, pain and suffering, and loss of ability to pursue her occupation and established course of life. We reversed the district court for failing to grant a new trial. *Renville,* ¶¶ 26-28.

¶21 In *Jenks*, we reached a different result by distinguishing *Renville*. *Jenks* also involved a rear-end collision. *Jenks*, ¶ 5. The main issue at trial was the nature and extent of one of the plaintiff's injuries; the parties disagreed about the plaintiff's damage claims for past medical expenses, future medical expenses, loss of earnings, and general damage claims. *Jenks*, ¶ 7. Relying on *Renville*, the plaintiff argued that the past medical expenses, past and future wage loss, and continuing pain requiring future medical treatment unquestionably amounted to more than the jury's total award of $9,873.00 and required a new trial. *Jenks*, ¶ 31. We noted, however, that *Renville* required reversal of a jury award which was insufficient to cover *uncontested* expenses. Unlike in *Renville,* the

8

damages alleged in *Jenks* were in dispute. *Jenks*, ¶ 36. We noted that the evidence presented at trial "revealed a significant dispute in the nature, cause, and severity of the injury, the need for future treatment, the existence and amount of past and future wage loss, and pain and suffering." *Jenks*, ¶ 36. Therefore, we refused to overturn the jury's verdict. *Jenks*, ¶ 38.

¶22 Similarly, in *Magart v. Schank*, 2000 MT 279, 302 Mont. 151, 13 P.3d 390, the plaintiff challenged a jury verdict that did not award damages for lost earning capacity. *Magart*, ¶ 7. The case arose out of an auto accident in which the defendant admitted negligence. The plaintiff was awarded damages for past and future medical expenses, past lost earnings, past and future pain and suffering, and loss of established course of life, but not lost earning capacity. The plaintiff argued that his continuing shoulder problems were evidence that he would not be able to continue working as a cement truck driver or garage door installer. *Magart*, ¶ 7. However, testimony at trial indicated that the plaintiff had left his truck driving job because he found a different job, not because of difficulties caused by his injury. *Magart*, ¶ 14. With respect to the precise issue of plaintiff's employment as a garage door installer, we recognized that even though the defendant did not present direct evidence to contradict the plaintiff's testimony that he experienced pain and difficulty installing garage doors:

> [t]his does not mean that where there is direct testimony in the record, uncontradicted by other *direct* testimony, that the court or jury is bound thereby or cannot render a decision contrary to such direct testimony. *A jury is entitled to weigh the testimony against adverse circumstantial evidence* and other factors which may affect the credibility of the witness.

9

*Magart*, ¶ 15 (emphasis added) (citation and internal quotations omitted). The jury had been shown a videotape of the plaintiff working without apparent difficulty, and such evidence could have provided a reasonable basis for the jury to conclude that the plaintiff's shoulder injury did not impair his ability to work. *Magart*, ¶ 16.

¶23 Both of the medical providers who testified on behalf of Neal, as well as the defendant's medical expert, acknowledged that Neal suffered from chronic neck pain as a result of the accident. However, there was conflicting evidence as to the nature and extent of Neal's injuries. For example, while Neal argues that he was "forced to give up well established course of life activities and hobbies" and that "wearing his fire fighter's helmet at work aggravated his neck," Neal continued to work for nine months after recovering from his knee injury, and no evidence was presented indicating that he was hindered in the performance of his firefighting duties. For all intents and purposes, Neal was working at "100 percent" pursuant to the Kalispell Fire Department's health policy. Neal told Nurse Charman at his exit exam that he planned to continue working with the county haz-mat team after retiring, which at times would require wearing a self-contained breathing apparatus and full protective gear. He did not tell her, or his physician at the Veteran's Administration Clinic, about pain in his neck. Furthermore, neither the defendant's medical expert nor anyone else offered testimony regarding the cost of future treatment, with the exception of Dr. Martini's approximation regarding the cost of surgery—the necessity of which was disputed by Dr. Wilson. The jury was thus free to

10

conclude that Neal's prior work-related knee injury and chronic back pain were just as significant in causing his retirement as his neck injury was.

¶24   This Court cannot speculate as to what the jury was doing or whether they left pain and suffering damages out of their award.  It is quite possible that the jury did not believe Neal's injury was as severe as he claimed or that all of his medical expenses were necessary.  It is conceivable, for example, that the jury considered only those medical expenses incurred before Neal returned to work as being "necessary," and thus awarded a smaller amount than Neal requested.  Other scenarios are equally as likely.  Importantly, however, we are not at liberty to speculate as to the jury's division of damages.  While it seems like a close call because the jury awarded damages in the exact amount of Neal's past medical expenses, the fact that these expenses were contested at trial, and that no special verdict form was used indicating the precise amounts awarded, makes it impossible for this Court to second-guess the jury award.  *Moore*, ¶ 11.  Substantial credible evidence supports the District Court's conclusion that the $7,358.56 awarded to Neal includes some amount for pain and suffering.  *Giambra*, ¶ 26.  Accordingly, the jury's verdict is affirmed.

¶25   **2. Did the District Court abuse its discretion by admitting defendant's expert testimony about Neal's prior work-related knee and back injuries?**

¶26   Neal argues that the District Court erred by allowing Nelson's defense medical expert, Dr. Wilson, to testify with regard to Neal's other ailments, including a previous knee injury, chronic lower back pain, and some stress and depression issues.  During his trial deposition, which was played for the jury, Dr. Wilson occasionally referenced Neal's

11

knee and back problems in the context of discussing Neal's medical history, as well as in response to questions regarding whether Neal's neck injury would have prevented Neal from continuing his employment as a firefighter. Dr. Wilson did not offer an opinion as to whether he believed Neal's knee and back injuries contributed to Neal's retirement. Nonetheless, Neal argues these references to "unrelated medical conditions mislead the jury and appeal to speculation without proof of a medical connection."

¶27 The District Court determined, and we agree, that Dr. Wilson's references to Neal's prior knee injury and back pain were relevant to whether Neal retired from the Kalispell Fire Department because of his neck injury. Dr. Wilson testified that Neal could have continued working as a firefighter in spite of his neck injury. Dr. Wilson noted that Neal worked as many as sixty hours a week, without any worsening in his neck, after returning from his knee injury. The jury may have inferred from evidence of Neal's other injuries that those may have caused his retirement. However, Dr. Wilson's testimony did not require the jury to reach that conclusion, nor did it encourage that result. However, because Neal was claiming that his retirement was caused by Nelson's negligence, it was relevant for Nelson to point out that Neal had suffered from other ailments prior to retiring.

¶28 Further, Neal himself elicited references to those injuries before Dr. Wilson's trial deposition was played for the jury. *See Hando v. PPG Indus., Inc.*, 272 Mont. 146, 150, 900 P.2d 281, 283 (1995). During his direct examination, Neal testified that after the accident, "I called Dr. Biggs, who had treated me for lower back strains in the course of

12

my work before . . . ." Likewise, Neal referred to the fact that he was recovering from knee surgery in 2003—which, as he described it, was "a Work Comp situation"—when he applied for a position as an EMT instructor at Flathead Valley Community College. Dr. Biggs also testified that he had treated Neal "many times" for "multiple injuries to his low back and to his knees." All of this testimony was introduced during Neal's case-in-chief—well before Dr. Wilson's discussion of Neal's prior injuries. The District Court did not abuse its discretion by allowing Dr. Wilson's testimony as well.

¶29 Neal also argues that he was prejudiced by Dr. Wilson's discussion of how psychological factors can play a role in an individual's experience with chronic pain. However, Neal only objected to this testimony on the basis of foundation and relevance. Neal did not object to this testimony on the basis of prejudice. "We have previously held that in order to preserve an objection to the admission of evidence for purposes of appeal, the complaining party must make a timely objection or motion to strike and *state the specific grounds for its objection*." *Schuff v. Jackson*, 2002 MT 215, ¶ 30, 311 Mont. 312, ¶ 30, 55 P.3d 387, ¶ 30 (emphasis added) (citation omitted). Because Neal failed to object to Dr. Wilson's "depression" testimony on the basis of prejudice, he waived the issue for purposes of appeal.

¶30 **3. Did the District Court abuse its discretion by denying Neal's proposed jury instruction on multiple causation?**

¶31 Neal argues that Nelson's "repeated reference to [Neal's] unrelated medical conditions and injuries and Defendant's arguments [that] other causes caused Neal's damages" warranted a jury instruction on multiple causation. The District Court

13

disagreed, observing that "this is definitely a single cause accident." The District Court instructed the jury that "[t]he defendant's conduct is a cause of the injury if it helped produce it and if the injury would not have occurred without it." The District Court did not give Neal's proposed multiple cause instruction.

¶32 "In those cases which do not involve issues of intervening cause, proof of causation is satisfied by proof that a party's conduct was a cause-in-fact of the damage alleged." *Busta v. Columbus Hosp. Corp.*, 276 Mont. 342, 371, 916 P.2d 122, 139 (1996). We held in *Busta* that, "with the exception of those cases involving allegations of independent intervening cause or multiple causes," it is sufficient to instruct the jury as to single causation only. *Busta*, 276 Mont. at 371, 916 P.2d at 139. In contrast, "where there are allegations that *the acts of more than one person* combined to produce a result (e.g., when the plaintiff alleges negligence and the defendant alleges contributory negligence, or when there are multiple defendants), we acknowledge that the recommended cause-in-fact instruction would be confusing and misleading." *Busta*, 276 Mont. at 371, 916 P.2d at 139 (emphasis added). In those cases, the multiple cause instruction is appropriate.

¶33 The central issue at Neal's trial was whether the neck injury resulting from Nelson's negligence caused Neal to retire. Neal correctly points out that *Busta* did not involve a situation such as his, where the plaintiff is faced with multiple "causes" of his alleged *damages* rather than the acts of multiple individuals causing an injury. While Neal contends that the same principle applies to both scenarios, Nelson argues that there

14

was no allegation that Neal's neck injury was caused by anyone other than Nelson, and as a result, the multiple cause instruction would not be appropriate.

¶34 We can find no authority for the proposition that the "substantial factor" test and multiple cause instruction is appropriate where multiple causes are alleged to have brought about certain damages, but not the event or injury itself. It does not appear that the multiple cause instruction would fit into a situation in which only one negligent defendant is involved, and such an instruction may well have been confusing to the jury where, as here, the defendant merely implied that the plaintiff's damages were not caused by the defendant's acts. Under the case as presented to the jury, we cannot conclude that the District Court abused its discretion by failing to give a multiple causation instruction.

¶35 **4. Did the District Court abuse its discretion by allowing Dr. Wilson to testify after concluding that the financial information the court had ordered Dr. Wilson to provide was satisfactory?**

¶36 Neal served interrogatories on Nelson seeking, among other things, the amount of income Nelson's medical expert, Dr. Wilson, derives from conducting IMEs. After various objections, exchanges of information, and the involvement of the District Court, Nelson provided Neal with the number of IMEs Dr. Wilson had performed during the previous three years, the names of the insurance companies that had retained Dr. Wilson to perform those IMEs, and the fees Dr. Wilson charged for the IMEs and related deposition and trial testimony. Nelson objected to providing Dr. Wilson's personal financial information and the total income he derives from conducting IMEs.

15

¶37 Neal moved to compel Nelson's response and the District Court initially granted Neal's motion. Nelson then moved the District Court to reconsider, and submitted an affidavit from Dr. Wilson stating that approximately twenty percent of his medical practice involves conducting IMEs, while the other eighty percent is devoted to treating patients suffering from neurological disorders. The affidavit also explained that the fees for IMEs conducted by Dr. Wilson's were not paid to Dr. Wilson himself, but rather were paid to either Wellcare, a nonprofit corporation at Community Medical Center which paid Dr. Wilson a regular salary, or to Dr. Wilson's private practice. According to Dr. Wilson's affidavit, he does not keep records of the separate income derived from IMEs, and it would be extremely burdensome, if not impossible, for him to calculate that amount. Neal moved to exclude Dr. Wilson's testimony on the basis of his refusal to provide the personal financial information requested. The District Court was satisfied with Dr. Wilson's explanation, however, and revised its order to allow Dr. Wilson to testify, thus denying Neal's motion in limine to exclude.

¶38 The District Court wisely recognized that it needed to "strike the proper balance between a party's need for information concerning an expert witness's potential bias and the doctor's rights of privacy and the right to be free from burdensome and intrusive discovery requests." The District Court determined that Dr. Wilson's disclosure of the number of IMEs he conducted, the fees his employer charged for those IMEs, and the percentage of his practice that involved conducting IMEs, was sufficient under *Hegwood v. Montana Fourth Judicial District Court*, 2003 MT 200, 317 Mont. 30, 75 P.3d 308.

This Court's statement in *Hegwood* that "a plaintiff . . . might well be allowed to discover information such as . . . the income derived from [IMEs]" is not a mandatory requirement that such information be provided under every circumstance. *Hegwood*, ¶ 17. We conclude that the District Court did not abuse its discretion by allowing Dr. Wilson to testify after he disclosed the available details of his IME practice.

¶39 **5. Did the District Court abuse its discretion by awarding Neal attorney fees pursuant to M. R. Civ. P. 37(c) after Nelson failed to admit prior to trial that Neal had been injured in the car accident?**

¶40 Nelson argues on cross-appeal that the District Court abused its discretion by awarding Neal $1,275.00 in attorney fees. Neal argued he was entitled to fees because Nelson had denied his second request for admission, which asked Nelson to admit that Neal was injured in the accident. Nelson's medical expert, Dr. Wilson, concluded that Neal sustained a neck injury in the collision after conducting Neal's IME, but Nelson still did not admit that Neal was injured. The jury subsequently agreed that Neal was injured. The District Court concluded Nelson's denial required Neal to prove causation at trial.

¶41 M. R. Civ. P. 37(c) provides:

> If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party, the other party's attorney or both to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (4) there was other good reason for the failure to admit.

Neal's counsel provided an affidavit attesting to an additional 8.5 hours of time spent proving Neal was injured at trial. Nelson argues that "neither Neal's discovery nor his proof at trial would have been different had Nelson's response been an admission." However, none of the exceptions within Rule 37(c) precluded the District Court from awarding Neal his reasonable attorney fees. *See Springer v. Becker*, 284 Mont. 267, 280, 949 P.2d 641, 649 (1997). Nelson's own medical expert concluded that Nelson caused Neal's neck injury, yet Neal was nonetheless required to prove that issue at trial. Under our applicable standard of review, the District Court did not abuse its discretion by awarding Nelson his reasonable attorney fees.

¶42 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS

18