DA 08-0573

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 390

PATRICIA ELLEN CLARK,

       Plaintiff and Appellant,

   v.

KARA TAYLOR BELL,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
                  In and For the County of Cascade, Cause No. DDV 06-1157
                  Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Benjamin R. Graybill; Graybill Law Firm, P.C.; Great Falls, Montana

       For Appellee:

           Paul Haffeman; Davis, Hatley, Haffeman & Tighe; Great Falls, Montana

Submitted on Briefs:  July 22, 2009

Decided:  November 17, 2009

Filed:

_____
                       Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Patricia Clark brought a negligence action to recover damages for injuries sustained in an automobile accident. A jury in the Eighth Judicial District Court, Cascade County, rendered a verdict in favor of Defendant Kara Bell. Clark appeals. We affirm in part, reverse in part, and remand for a new trial.

¶2 We restate the issues as follows:

¶3 1. Did the District Court err by allowing Defendant Bell to introduce evidence of Clark's preexisting conditions to challenge Clark's proof of causation?

¶4 2. Did the District Court manifestly abuse its discretion by denying Clark's motion for a new trial, based upon unfair surprise?

¶5 Although we reverse and remand for a new trial under issue 2, we address the first issue to provide guidance to the court and parties upon remand. We do not reach the remaining issues raised by Clark.

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 On August 2, 2004, Clark was stopped in traffic in Great Falls when her vehicle was struck from behind by a pick-up truck driven by Bell. After the collision, Clark and Bell drove their vehicles into an adjacent parking lot and waited for police to arrive. Clark appeared alert and oriented, and told Bell she was "okay." Both women declined medical treatment to responding paramedics. Later that day, Clark went to the emergency room complaining of moderate pain to her neck, back and arm, as well as

2

nausea and vomiting. She denied any loss of consciousness, and a neurological evaluation was normal. She was found to have no dental injuries.

¶7 More than a year later, Clark also began treating with medical doctors she would call as expert witnesses in the trial, Patrick Galvas, D.O., Ph.D., James English, Ph.D., and James Zander, D.D.S. She complained of pain to her head, neck, shoulder, back, wrist, arm, knee, and abdominal muscles, as well as a cracked tooth, distractibility, forgetfulness, headaches, confusion, memory loss, problems with concentration, depression and fatigue, and other cognitive impairments.

¶8 Clark filed suit, alleging the accident caused her injuries, and that Bell was liable for her damages. Bell admitted that she caused the accident, but denied that some of Clark's injuries had occurred or were attributable to the accident. The District Court granted Bell a Rule 35 independent medical evaluation of Clark before a panel of physicians associated with WellCare Community Medical Center, Inc., a non-profit Missoula hospital. The panel members included neurologist Lennard Wilson, M.D., orthopedic surgeon Michael Sousa, M.D., and psychiatrist William Stratford, M.D. After their examinations, Doctors Wilson, Sousa, and Stratford concluded that many of Clark's injuries preexisted the accident or were aggravations of preexisting conditions.

¶9 Clark moved in limine to exclude testimony regarding her preexisting conditions or injuries by the independent medical physicians and proposed defense experts, Sousa, Stratford, and Wilson, on the ground that their expert disclosures were insufficient and did not divide or apportion her pre- and post-accident injuries. The District Court granted

the motion with an order whose scope would later be contested. Bell then filed a petition for writ of supervisory control with this Court challenging the order. Bell argued that the District Court's order was erroneous on the ground that, in addition to excluding testimony by the physicians, it also barred her from presenting evidence of preexisting injuries through other means, such as cross-examination of Clark's witnesses, to refute Clark's allegations that her actions were the cause of Clark's injuries. We denied Bell's petition, concluding that appeal was an adequate remedy.

¶10 On the morning of trial, the District Court addressed several outstanding matters outside of the jury's presence. The District Court explained that the testimony of Doctors Sousa, Wilson, and Stratford would be excluded in light of their insufficient pretrial disclosures.[1] Regarding other evidence of preexisting injuries, the District Court attempted to clarify its order. The District Court stated that Bell's interpretation of its order, as set forth in Bell's arguments to this Court in her petition for supervisory control, was overbroad. The District Court explained that it had not excluded other relevant testimony about preexisting injuries, but had only excluded the testimony of Sousa, Stratford, and Wilson. In response, Clark's counsel expressed concern, and sought further explanation. Clark's counsel highlighted the language of the District Court's order which seemed to prohibit all references to Clark's preexisting injuries. The District

---

[1] The District Court completely excluded the testimony of Doctors Sousa and Wilson. The court permitted Dr. Stratford to testify on narrow grounds, but the defense did not call Stratford as a witness.

4

Court indicated that because it could not anticipate at that point what evidence Bell would offer, it would reserve further clarification until then.

¶11 During his opening statement, Bell's counsel began discussing Clark's preexisting injuries. Clark objected and, outside the presence of the jury, argued to the District Court that Bell had violated the order prohibiting discussion of preexisting injuries. After receiving a proffer of evidence from Bell, the District Court overruled Clark's objection and permitted Bell to continue his discussion of Clark's preexisting injuries in his opening statement.

¶12 During the trial, Clark called Doctors Galvas, English, and Zander as expert witnesses, and solicited testimony from them supporting her injury claims. Under Bell's cross-examination, Dr. Galvas testified that having an accurate medical history was important, but conceded that the history provided by Clark was not accurate in many respects and that he did not have a full picture when he had diagnosed her and formed his opinions that the accident caused her injuries. Dr. Galvas testified that, while Clark had initially told him she developed various physical injuries soon after the accident, the symptoms did not appear to develop until much later. He acknowledged that, although told by Clark she suffered from "no residuals" from previous traumas, her medical records established a history of multiple complaints to medical doctors relating to prior traumas.

¶13 Dr. English likewise opined that Clark had suffered an accident-related head injury, premised upon the assumption that she had suffered a concussion. Under Bell's

5

cross-examination, Dr. English conceded that Clark did not satisfy most of the criteria for diagnosing a concussion, in that she had no loss of consciousness, post-traumatic amnesia, or a skull fracture. Like Dr. Galvas, Dr. English admitted that he was not provided all of Clark's medical records when he had formulated his opinions, and that he had not been told about some of Clark's preexisting injuries.

¶14 Following the presentation of evidence, Clark moved for judgment as a matter of law on the issue of causation. Clark argued that, pursuant to *Truman v. Mont. Eleventh Jud. Dist. Ct.*, 2003 MT 91, 315 Mont. 165, 68 P.3d 654, Bell was required to prove that Clark's injuries were divisible and apportionable to a reasonable degree of medical probability. Because Bell had failed to provide testimony from physicians regarding apportionment, Clark argued that her evidence was unchallenged and she was entitled to a verdict on causation as a matter of law. The District Court denied the motion, ruling that Clark still bore the burden of proving causation and that the jury was entitled to weigh her evidence. The District Court also rejected Clark's proposed instruction to the jury that Bell had not proven that Clark's preexisting injuries were the cause of her current injuries.

¶15 The jury returned a unanimous verdict for Bell, awarding no damages. Clark thereafter filed a motion for a new trial, which the District Court denied. Additional facts will be discussed herein as necessary.

**STANDARD OF REVIEW**

¶16 District courts have broad discretion to determine the admissibility of evidence, and we review for abuse of discretion. *Neal v. Nelson*, 2008 MT 426, ¶ 16, 347 Mont. 431, 198 P.3d 819 (citing *Seeley v. Kreitzberg Rentals, LLC*, 2007 MT 97, ¶ 14, 337 Mont. 91, 157 P.3d 676, *overruled on other grounds, Giambra v. Kelsey*, 2007 MT 158, ¶ 27, 338 Mont. 19, 162 P.3d 134). We likewise review a district court's decision to give or refuse a proposed jury instruction for an abuse of discretion. *Neal*, ¶ 16 (citing *Giambra*, ¶ 28). An abuse of discretion occurs if the district court "acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice." *Neal*, ¶ 16 (quoting *Linn v. Whitaker*, 2007 MT 46, ¶ 13, 336 Mont. 131, 152 P.3d 1282).

¶17 Whether a judgment as a matter of law should have been granted or denied is a question of law which we review de novo, entitling the parties to full review without special deference to the views of the district court. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727.

¶18 The standard of review of a district court's ruling on a motion for a new trial based on surprise or irregularity in the proceedings is abuse of discretion. *Willing v. Quebedeaux*, 2009 MT 102, ¶ 19, 350 Mont. 119, 204 P.3d 1248 (citing *Lopez v. Josephson*, 2001 MT 133, ¶ 16, 305 Mont. 446, 30 P.3d 326). "The decision to grant or deny a new trial is within the sound discretion of the trial judge and will not be disturbed

absent a showing of manifest abuse of that discretion." *Willing*, ¶ 19 (citing *Lopez*, ¶ 16). The court's abuse of discretion must be so significant as to materially affect the substantial rights of the party asserting error. *Willing*, ¶ 19 (citing *Lopez*, ¶ 16).

## DISCUSSION

¶19 ***1. Did the District Court err by allowing Bell to introduce evidence of Clark's preexisting conditions to challenge Clark's proof of causation?***

¶20 Clark argues that the District Court erred by permitting Defendant Bell to cross-examine her experts regarding her preexisting injuries to defeat the causation element of her negligence claim. Citing to *Truman*, Clark argues that a defendant must prove the divisibility of an injury, by a reasonable medical probability, before she is able to submit relevant evidence to negate an allegation that she is the cause of an injury. Thus, Clark insists that Bell was required to offer expert medical evidence demonstrating that Clark's alleged injuries could be divided, or apportioned, between the accident at issue and her preexisting conditions, before Bell was allowed to cross-examine her experts about those conditions.

¶21 Bell responds that *Truman* did nothing to change the plaintiff's burden of proving the elements of a negligence claim, including causation, and did not hold that defense expert testimony is the only means by which a defendant can challenge causation. Bell argues that she was entitled to cross-examine Clark's experts regarding preexisting injuries to challenge the bases of their opinions as well as Clark's contention that her injuries were caused by the accident.

8

¶22 First, as the District Court correctly noted, the Montana Rules of Evidence expressly provide that an "expert may . . . be required to disclose the underlying facts or data [of his or her opinion] on cross-examination." M. R. Evid. 705. Rule 705 "mandates that the opinion of a qualified expert is admissible, and if opposing counsel believe the opinion is not founded on sufficient data, cross-examination is the shield to guard against unwarranted opinions." *Hart-Anderson v. Hauck*, 230 Mont. 63, 73, 748 P.2d 937, 943 (1988) (quoting *Stewart v. Casey*, 182 Mont. 185, 193, 595 P.2d 1176, 1180 (1979)). We have repeatedly stated that Rule 705 affords a party an essential right to cross-examine the plaintiff's expert witness regarding the basis of that expert's opinion. *See e.g., Lynch v. Reed*, 284 Mont. 321, 332-33, 944 P.2d 218, 225 (1997) (reversible error to deny latitude to cross-examine basis of expert opinion); *State v. Van Dyken*, 242 Mont. 415, 428, 791 P.2d 1350, 1358 (1990) ("expert may in any event be required to disclose the underlying facts or data on cross-examination"); *Green v. Hagele*, 182 Mont. 155, 159, 595 P.2d 1159, 1161 (1979) (party must be afforded wide latitude to cross-examine expert regarding qualifications and bases of opinion). "Indeed, John Henry Wigmore called cross-examination the 'greatest legal engine ever invented for the discovery of truth.'" *State v. Mizenko*, 2006 MT 11, ¶ 13, 330 Mont. 299, 127 P.3d 458 (citations omitted).

¶23 *Truman* did not disturb the basic right to challenge causation, here, by testing the opinions of the plaintiff's experts by reference to relevant evidence on cross-examination. *Truman* affirmed that "a defendant is permitted to submit relevant evidence of subsequent

9

accidents to negate allegations that he is the cause or sole cause of an injury." *Truman*, ¶ 31. Such evidence is "subject to traditional evidentiary considerations such as prejudice and relevancy." *Truman*, ¶ 31. However, *Truman* clarified that if a defendant asserts he or she "is only liable for *a portion of* those damages," or, in other words, asserts that the plaintiff's injuries can be apportioned to other causes and wants the jury to "reduce [the defendant's] obligation by *the portion of* [plaintiff's] damages for which he has proven he [is not] responsible," then the defendant "must prove, by a reasonable medical probability, that the injury is divisible." *Truman*, ¶ 32 (emphasis added). If the defendant fails to prove by reasonable medical probability that the plaintiff's injury is divisible and apportionable, he may not argue divisibility and apportionment to the jury, nor seek an apportionment instruction. *Truman*, ¶ 33. Rather, the defendant "is liable for the entire damage" and is entitled to a jury instruction to that effect. *Truman*, ¶ 32.

¶24 Since *Truman*, our cases have illustrated these principles. Similar to the facts here, the defendant in *Ele v. Ehnes*, 2003 MT 131, ¶¶ 5, 7, 316 Mont. 69, 68 P.3d 835, admitted her liability in causing a rear-end collision, but disputed that the accident had caused any injury to the plaintiff Ele. Defendant Ehnes presented no medical experts, but cross-examined Ele and his experts, eliciting admissions that Ele had not informed his medical providers of his preexisting conditions. *Ele*, ¶¶ 10-13. Despite Ele's argument that Ehnes had presented no evidence, we affirmed the verdict for the defendant, acknowledging that the jury was entitled to weigh the evidence elicited on cross-examination. *Ele*, ¶¶ 30-35.

10

¶25 We have affirmed the district court's discretionary admission or exclusion of evidence of preexisting injuries under the "traditional evidentiary considerations" noted by *Truman*. *Truman*, ¶ 31. In *Neal v. Nelson*, 2008 MT 426, ¶¶ 26-28, 347 Mont. 431, 198 P.3d 819, we affirmed the district court's admission of the defendant's expert testimony about the plaintiff's preexisting knee and back injuries as relevant to the plaintiff's claim that the injuries in the subject accident had forced him to retire. In *McCormack v. Andres*, 2008 MT 182, ¶¶ 25-27, 30, 343 Mont. 424, 185 P.3d 973, we affirmed the district court's exclusion of defendant's cross-examination of plaintiff's medical providers about her preexisting injuries given the lack of a relevant connection between those injuries and current injuries. Thus, our cases have demonstrated that a defendant may submit evidence of other injuries to negate allegations that he or she is the cause or sole cause of the current injury, subject to the trial court's application of traditional evidentiary considerations. While the evidence at issue in *Truman* involved subsequent injuries, the same rule would apply to evidence of preexisting injuries.

¶26 Here, the District Court reasoned that the "Plaintiff's preexisting head, cervical, and lumbar injuries, chronic pain, and depression were similar, if not identical, to the types of injuries attributed by Plaintiff to the subject accident at issue." Bell elicited cross-examination revealing that Clark had suffered from the same or similar injuries for years, from prior accidents, and had not disclosed that history to her experts. Dr. Galvas conceded that, prior to the accident, Clark had sought, on numerous occasions, treatment for fatigue, increasing chronic back and neck pain, and depression—the same injuries she

11

alleged were caused by Bell's negligence. Bell used this evidence to challenge Clark's claim that Bell was the cause of Clark's injuries, and did not seek jury apportionment of Clark's injuries between this and other causes or accidents. The evidence was relevant and submitted for a proper purpose. The District Court did not abuse its discretion.

¶27 Clark also argues that the District Court erred by denying her motion for judgment as a matter of law on the issue of causation or, alternatively, her request for an additional instruction on causation. These arguments are premised on her assertion that the District Court erred in allowing the jury to hear any evidence regarding her preexisting injuries, and are thus resolved by the above discussion. Clark also argues that because Bell presented no direct evidence from lay or expert witnesses, her causation evidence was unchallenged and she was entitled to judgment as a matter of law. However, as in *Ele*, Bell challenged Clark's evidence through cross-examination. The jury was entitled to weigh that evidence and determine its credibility against Clark's evidence. "[E]ven if uncontradicted direct testimony is admitted, the jury is entitled to weigh that testimony against adverse circumstantial evidence and other factors which may affect the credibility of the witness." *Ele*, ¶ 32 (citation omitted). Thus, the District Court properly denied Clark's motion for judgment as a matter of law on causation, leaving the question to the jury.

¶28 ***2. Did the District Court abuse its discretion by denying Clark's motion for a new trial, based upon unfair surprise?***

¶29 Clark argues that Bell's references to her preexisting injuries violated the District Court's order in limine, and that she was unfairly surprised and prejudiced, entitling her

12

to a new trial pursuant to § 25-11-102(1), (3), MCA (2007). She asserts the District Court abused its discretion in denying her motion for a new trial.

¶30 Section 25-11-102(3), MCA, provides that a new trial may be granted for causes affecting a party's substantial rights, including accident or surprise which ordinary prudence could not have guarded against. We addressed surprise and the impact upon the trial which is necessary to warrant a new trial in *Donovan v. Graff*, 231 Mont. 456, 459, 753 P.2d 878, 880 (1988); *Buhr v. Flathead Co.*, 268 Mont. 223, 252-53, 886 P.2d 381, 398-99 (1994), *overruled on other grounds*, *Johnson*, ¶ 16; and recently in *Willing*, ¶¶ 20-28. A party seeking a new trial by virtue of surprise must demonstrate:

> 1) the moving party was actually surprised; 2) the facts causing the surprise had a material bearing on the case; 3) the verdict or decision resulted mainly from these facts; 4) the surprise did not result from the moving party's inattention or negligence; 5) the moving party acted promptly and claimed relief at the earliest opportunity; 6) the moving party used every means reasonably available at the time of the surprise to remedy it; and 7) the result of a new trial without the surprise would probably be different.

*Willing*, ¶ 25 n. 2 (quoting *Buhr*, 268 Mont. at 253, 886 P.2d at 399).

¶31 Long before trial, Clark moved in limine to prohibit Bell "from attempting to elicit any testimony, introduce any evidence, or argue that any pre-existing condition or injury suffered by Ms. Clark cause[d] or contribute[d] to the present physical or mental symptoms that she and her expert treating physicians attribute to the motor vehicle crash giving rise to this action." The basis for the motion was that Bell had not disclosed any medical expert who could apportion part or all of her injuries to a preexisting condition. Bell opposed the motion, arguing that "whatever the Plaintiff may claim about the

13

existence and cause of her alleged injuries and symptoms, there is strong evidence to the contrary, which the jury must be allowed to hear."

¶32 The District Court granted what it perceived to be Clark's motion, which it described as a request "to preclude Defendant Bell from presenting evidence, argument, or other express or implied reference to preexisting conditions as causes of Plaintiff's post-accident pain, depression, and anxiety on the ground that Defendant's expert disclosures [are] not sufficient bases under M. R. Civ. P. Rule 26(b)(4)(A)(i) to support such testimony at trial." Thus, while the District Court referenced the asserted insufficiency of Bell's experts' disclosures, its description of the relief requested by Clark was not merely a preclusion of the testimony by the experts, but a preclusion of any "evidence, argument or other . . . reference" to the disputed evidence.

¶33 After a 13-page analysis, the District Court's order stated, in pertinent part, as follows:

> Plaintiff's motion in limine to exclude testimony from Drs. Sousa, Wilson, and Stratford attributing Plaintiff's post-accident pain, depression, and anxiety to preexisting conditions (Doc. 65-66, 79 and 81) is hereby granted. Accordingly, *Defendant is hereby precluded from presenting any evidence, argument, or reference to Plaintiff's preexisting injuries* or physical or mental condition <u>and</u> precluded from presenting evidence, argument, or reference to preexisting conditions as causes of post-accident pain, depression, or anxiety;

(Emphasis added.) The order further stated that this ruling did not relieve Clark of her burden of proving that Bell's negligence caused Clark's post-accident mental and physical injuries.

14

¶34 While it can fairly be said that the order in limine was subject to more than one interpretation, Defendant Bell then filed a petition for writ of supervisory control with this Court in which she set forth her interpretation of the order. Bell asserted that the order not only excluded all testimony from her medical experts, but also prohibited her "from even presenting evidence through other means of pre-existing injuries or physical or mental conditions" to challenge causation for Clark's injuries, which she argued was inconsistent with *Truman*. Bell sought relief from the order because it:

> prevent[ed] Bell from presenting evidence of other causes through other witnesses, to challenge Clark's threshold burden of proving cause-and-effect. For example, in cross-examining Clark's experts, Bell should have been allowed to point out weaknesses in their opinions about cause-and-effect by referring to evidence of pre-existing conditions which contradicted those opinions.

The point here is that Bell read the District Court's order the same way that Clark read the order—to exclude "any evidence, argument or reference" to Clark's preexisting injuries, by any means. We declined to exercise supervisory control, concluding that Bell had an adequate remedy of appeal, and thus left the order in place.

¶35 On the morning of the first day of trial, the District Court addressed several outstanding preliminary matters outside of the jury's presence, including the proposed testimony of defense medical experts Sousa, Stratford, and Wilson. The District Court ruled that the pretrial disclosures of the defense experts were insufficient, and Bell was precluded from calling them as witnesses. The District Court then attempted to clarify its order in limine regarding evidence of Clark's preexisting injuries:

15

> [T]he Court issued an order precluding introduction or argument regarding testimony by [defense experts] regarding pre-existing injuries as a source of or cause of post-accident pain, depression, and anxiety in this case . . . .
>
> *Now, the bottom line ruling was that the Defendant may not present evidence from these individuals attributing Plaintiff's post-accident pain, depression, or anxiety to pre-existing conditions due to the insufficiency of the expert medical disclosures as to divisibility and apportionment.*
>
> Thus, the Court ruled that the Defendant may not present evidence or argument referencing preexisting injuries or medical conditions attributing those pre-existing conditions as causes of the post-accident pain, depression, or anxiety.
>
> Now, Defendant, in [her] application for Writ of Supervisory Control, argued, among other things, to the Montana Supreme Court that that ruling far exceeded the restrictions imposed by *Truman* . . . .
>
> *Now, so the record is clear, contrary to the way that it was presented to the Supreme Court, there was no argument before this court that there was other evidence from other witnesses of alternative causation* . . . . [T]o the extent that the order that this Court has [] issued has been characterized as being overly broad, that is not accurate. This order was issued in the context of the dispute regarding the sufficiency of the expert disclosures for Doctors Wilson, Stratford, and Sousa.

(Emphasis added.) In response, Clark's counsel raised a concern about the meaning and scope of the court's clarification. He read back the language from the court's order, quoted earlier, that the "Defendant is hereby precluded from presenting any evidence, argument, or reference to Plaintiff's pre-existing injuries . . . ." Clark asked the court if its clarification meant that Bell was not permitted to ask questions about her "pre-existing conditions to the extent that that is asked in the context of asking about causes or suggesting that they are causes for anything that's going on now with regard to [Clark's] medical condition." The District Court responded that Clark's understanding was correct "in general terms," but that the court was not aware of what evidence Bell intended to introduce, so would reserve ruling until the evidence was presented.

16

¶36 During his opening statement, Bell's counsel referenced Clark's preexisting injuries. Clark's counsel objected and, outside the presence of the jury, again read back to the court the language of its order in limine prohibiting Bell from presenting "any evidence, argument or reference to Plaintiff's preexisting injuries." After argument and an offer of proof by Bell, the District Court overruled Clark's objection, permitting Bell's counsel to continue his opening statement. Bell's counsel extensively cross-examined Clark's medical experts about her preexisting injuries, and called Bell as the only defense witness.

¶37 Applying the above-stated criteria for obtaining a new trial due to unfair surprise, we conclude as follows: (1) the District Court's order was subject to multiple interpretations and, despite the attempt to clarify its ruling, that clarification came on the first day of trial and Clark was actually surprised; (2) admission of evidence about Clark's preexisting injuries had a material bearing on the case; (3) the jury's verdict rested on whether they believed Clark's injuries were caused by the accident; (4) the surprise did not result from Clark's inattention or negligence—prior to trial, she had moved to exclude evidence of her preexisting injuries and obtained an order; (5) Clark was vigilant at trial, objecting at Bell's first reference to her preexisting injuries; (6) aside from objecting at trial and changing her trial strategy by questioning her own experts about her preexisting injuries, there was nothing else Clark could have done to remedy the surprise; and (7) a new trial where Clark is properly advised of the ruling may well render a different result.

¶38 The District Court gave three reasons for denying Clark's motion for a new trial on the ground of unfair surprise: 1) Clark clearly understood the limited scope of the court's in limine order; 2) the court clarified its order before trial began; and 3) Clark elicited testimony about her preexisting injuries from her own experts on direct examination. However, it is apparent from the record that the "limited scope" of the court's order was not clearly understood. Indeed, the interpretation of the order which Bell provided in her petition for supervisory control to this Court served to confirm Clark's own interpretation—that the order in limine precluded all evidence, testimony or reference to Clark's preexisting injuries. The District Court did not correct the parties' mutual misunderstanding of the order until the morning of the first day of trial, creating the unfair surprise to Clark. Although Clark questioned her own experts about her preexisting injuries, she did so as a "last-ditch" change in trial strategy in response to the surprise and was substantially disadvantaged in trying a case she had not prepared for.

¶39 We conclude the District Court manifestly abused its discretion in denying Clark's motion for a new trial on the ground of unfair surprise. We reverse and remand for a new trial.

¶40 Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.

/S/ JIM RICE

18

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS