JUSTICE BAKER,
dissenting.
¶26 I share entirely the Court’s assessment of defense counsel’s conduct in this case. As the Court points out, however, this Court must find a manifest abuse of discretion in order to reverse the District Court. Opinion, ¶ 17. Because the District Court was “in the best position to determine the prejudicial effect of attorney misconduct on the jury,’’Dees, 260 Mont. at 443, 861 P.2d at 148, I would afford more deference to its decision not to grant O’Connor a new trial.
¶27 Although I agree with the Court that defense counsel’s conduct constitutes “an irregularity in the proceeding” on behalf of an adverse party, the plaintiff is not entitled to relief on that ground unless the irregularity deprived her of a fair trial. Section 25-11-102(1), MCA. Further, to obtain a new trial on the ground of surprise, O’Connor must demonstrate not only that the facts causing the surprise had a material bearing on the case, but also that “the verdict or decision resulted mainly from these facts” and that “the result of a new trial without the surprise would probably be different.” Clark v. Bell, 2009 MT 390, ¶ 30, 353 Mont. 331, 220 P.3d 650 (citations omitted).
¶28 Based upon its review and recollection of the entire trial, the District Court concluded that the bird damage photographs “did not materially affect the [trial’s] outcome.” The court relied on all of the evidence, including notably that there was other testimony about the speed of George’s vehicle and that the photographs were not a significant portion of the evidence pertaining to O’Connor’s injuries. ¶29 George testified that the speed limit where the collision occurred was thirty miles per hour and that she normally drives twenty to twenty-five miles per hour on that route. George said that she saw O’Connor’s vehicle just before the collision, that she braked “pretty hard” before hitting O’Connor, and that the collision felt “very light, like a little speed bump.” George said that she did not feel any jolting motion and was not thrown forward in her seat. George also testified that none of her vehicle’s air bags deployed and that her seatbelt never locked. O’Connor likewise testified that none of her vehicle’s air bags deployed. She further testified that she was not pushed into the car stopped immediately in front of her, and she did not remember whether her car moved at all due to the collision’s impact.
¶30 The jury also heard extensive testimony from O’Connor’s physicians regarding her history of chronic pain, predating the *135 collision.[1] O’Connor testified that she did not have lower back pain until after the collision. However, defense counsel produced treatment notes from O’Connor’s chiropractor, Dr. Michael McClain, indicating that O’Connor complained of lower back pain in the summer of 2008; from a pain specialist indicating that she had numbness and tingling in her heels in 2007; and from a massage therapist indicating that O’Connor had pain radiating into her right hamstring and numbness and tingling in her lower legs in 2007. Dr. McClain’s treatment notes showed that he treated O’Connor for lower back pain more than twenty-five times in the summer of2008. His notes from each session with O’Connor state, “Patient presents today with neck pain, mid-back pain, and lower back pain.” O’Connor said she never told Dr. McClain that she had lower back pain, and she was unsure why she was treated for it. Defense counsel also questioned O’Connor’s doctors about her two workers’ compensation claims — one in 1999 and one in 2004 — relating to neck injuries. She was still treating for the latter injury at the time of the collision.
¶31 Dr. Lennard Wilson, who conducted an independent medical examination of O’Connor, testified via video deposition that an examination of O’Connor’s medical records prior to the collision and her current complaints indicated a chronic degenerative medical condition dating back to 1999. Dr. Wilson advised that O’Connor’s chronic pain would be better managed through physical therapy than with the epidural injections she received earlier that year from her pain specialist, Dr. Steven Martini.
¶32 Dr. Wilson also testified that, in his January 22, 2014 examination, he found no evidence of nerve damage or permanent injury to O’Connor’s lower back or to her right leg. Although Dr. Wilson surmised that O’Connor likely had some whiplash and lumbar strain due to the collision, he found no evidence indicating that the collision caused major clinical worsening of her neck or back pain. A September 5, 2012 report by Dr. Charles Anderson, who conducted electromyography and motor nerve conduction tests on O’Connor, likewise indicated no nerve damage. Although Dr. Martini diagnosed an annular tear in O’Connor’s lower back from his review of a June *136 2012 MRI,[2] Dr. Wilson and Dr. Philip Steele, O’Connor’s orthopedic doctor, examined the same MRI and found no nerve damage or other injury to O’Connor’s lower back.
¶33 Given the totality of the evidence, particularly O’Connor’s history of chronic pain prior to the collision and the lack of concurrence by medical professionals on the cause of her pain, O’Connor has not demonstrated that the verdict “resulted mainly from” the facts causing the surprise. Clark, ¶ 30. Though both parties referred to the photographs depicting bird damage, each argued from the undisputed photographs about how much damage the accident caused. The District Court also gave an instruction cautioning the jury that minor damage to a vehicle does not necessarily mean that the occupant sustained minor injuries.
¶34 In Cooper, we examined the “cumulative prejudice” resulting from counsel’s improper argument about a “black mark” on the defendant doctor’s reputation, combined with “anxieties expressed by the jurors” during voir dire about the impacts on a physician of a malpractice judgment against him. Cooper, ¶¶ 38-43. The expressed concerns by members of the venire (“One juror voiced his belief that a plaintiffs verdict would be tantamount to a life sentence,” Cooper, ¶ 38), taken together with counsel's appeal to passion and prejudice, rendered the trial unfair. Here, the District Court considered the cumulative record, having heard the voir dire, evidence, and argument both parties presented, and determined on balance that the trial was not unfair. Based upon the substantial conflicting evidence about O’Connor’s injuries, the District Court rejected her claim that it was the extra crack in the bumper depicted in the bird damage photographs that caused the jury to discredit her theory of the collision and award minimal damages for her claimed injuries.[3] In light of the record, and applying the considerable deference due a trial court under the “manifest abuse of discretion” standard, I am unable to conclude that the court made an “obvious, evident or unmistakable” error in the exercise of its discretion. McDermott, ¶ 11.
¶35 The District Court, having heard the entire trial, was in the best position to determine whether defense counsel’s misconduct prejudiced *137 O’Connor’s case. Dees, 260 Mont. at 443, 861 P.2d at 148. The District Court clearly considered all of the evidence, concluding that O’Connor “failed to show how the mistake in the photos affected her material rights.” I would hold that O’Connor has not demonstrated that the trial as a whole was unfair or that the result of a new trial without the surprise bird photographs “would probably be different.” Clark, ¶ 30. I would affirm the District Court’s judgment.

 O’Connor does not challenge the admission of evidence concerning her preexisting injuries or condition.

 George challenged Dr. Martini’s qualifications, pointing out that he had a history of licensing issues and no board certifications.

 O’Connor does not raise a claim of insufficient evidence to support the jury’s verdict. See generally Murray v. Whitcraft, 2012 MT 298, 367 Mont. 364, 291 P.3d 587.